

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-15-1996

# United States v. Price

Precedential or Non-Precedential:

Docket 95-3333

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"United States v. Price" (1996). *1996 Decisions.* Paper 233.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/233

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 95-3333
_____


UNITED STATES OF AMERICA

v.

THOMAS PRICE,
                    Appellant


_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 94-221-04)
_____

Submitted Under Third Circuit LAR 34.1(a)
January 12, 1996

Before: SCIRICA, ALITO, SAROKIN, <u>Circuit Judges</u>

(Opinion Filed: February 15, 1996)
_____

Paul J. Brysh, Esquire
Bonnie R. Schlueter, Esquire
Office of United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA  15219

          <u>Counsel for Appellee</u>

Charles J. Porter, Esquire
Brucker, Zappala, Schneider & Porter
Suite 2230 Grant Building
Pittsburgh, PA  15219

          <u>Counsel for Appellant</u>

          _____


          OPINION OF THE COURT
          _____


1

SAROKIN, <u>Circuit Judge</u>:

On September 12, 1994, two masked men entered a branch of the Mellon Bank in Pittsburgh, Pennsylvania. One of them pointed a gun at a teller, while the other jumped over the counter and removed money from the bank drawers. Their deed done, the two men fled the bank, hopped in a waiting car and sped from the scene of the crime. Thomas Price was convicted in the United States District Court for the Western District of Pennsylvania of armed bank robbery, in violation of 18 U.S.C. §§ 2113(d) and 2, and knowingly and willfully carrying and using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2. Mr. Price now appeals his conviction on various grounds.

I.

Mr. Price first challenges the district court's instruction to the jury regarding the "use and carry" count.

Section 924 of Title 18 of the United States Code states, <u>inter</u> <u>alia</u>, that "[w]hoever, during and in relation to any crime of violence . . . for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . be sentenced to imprisonment for five years . . . ." 18 U.S.C. §924(c)(1).

2

Mr. Price was charged with violating this provision in the district court. At the end of the trial, the district court gave the jury the following instruction:

> The indictment also charges that on or about September 12, 1994, in the western district of Pennsylvania, defendant Thomas Price used a firearm, a .45 caliber Norinco pistol, during a crime of violence, armed bank robbery.
>
> In order to sustain its burden of proof for the crime of using a firearm during a crime of violence, the government must prove the following two essential elements beyond a reasonable doubt:
>
> One, Defendant Thomas Price committed the crime of armed robbery as charged in the indictment; and
>
> Two, during and in relation to the commission of that crime, the defendant knowingly used a firearm.
>
> The government has charged Thomas Price with aiding and abetting this crime as well. All of the instructions that I previously gave you about aiding and abetting also apply to this charge.
>
> . . .
>
> The phrase uses or carries a firearm means having a firearm available to assist in the commission of the alleged armed bank robbery.
>
> In determining whether defendant Thomas Price used or carried a firearm, you may consider all the factors received in evidence in the case, including the nature of the underlying crime of violence, the proximity of defendant to the firearm in question, the usefulness of the firearm to the crime alleged and the circumstances surrounding the presence of the firearm.
>
> The government is not required to show that the defendant actually displayed or fired the weapon. The government is required, however, to prove beyond a reasonable doubt that the firearm was under defendant's control at the time the crime of violence was committed.

3

As I stated before, you must also consider whether the defendant aided or abetted the use or carrying of a firearm in arriving at your verdict.

If you find beyond a reasonable doubt that Thomas Price aided and abetted Charles Stubbs in the use of a firearm during the commission of the armed bank robbery, then you may find Mr. Price guilty of using a firearm during the commission of a felony, even though there is no proof that he actually had the firearm in his physical possession.

You may find that Mr. Price aided and abetted Mr. Stubbs in the use of a firearm during the commission of a felony only if you find beyond a reasonable doubt that Mr. Price knowingly joined in, aided or assisted in the bank robbery, that his action was willful and voluntarily taken and that he had knowledge that a firearm was to be used in the bank robbery.

Appendix at 451A-453A.

The two issues regarding this instruction are, first, whether having a firearm available to assist is sufficient to meet the second element of "using a firearm," and, second, whether one can be convicted under 18 U.S.C. § 924(c) on an "aiding and abetting" theory.

A.

Mr. Price argues that the district court erred when it instructed the jury that "[t]he phrase uses or carries a firearm means having a firearm available to assist in the commission of the alleged armed robbery" because that sentence "is an incorrect statement of the law in this Circuit." Appellant's Brief at 34. Specifically, he argues that under our holding in United States v. Theodoropoulos, 866 F.2d 587, 597 (3d Cir. 1989), "availability alone [is] insufficient to establish a use in relation to a crime of violence." Appellant's Brief at 34. The government, in response, argues that "appellant Price's position

4

is based upon a misreading of Theodoropoulos." Government's Brief at 17.

> In Theodoropoulos, this Court held that possession of a firearm constitutes use under section 924(c) if there is:
>> i) Proof of a transaction in which the circumstances surrounding the presence of a firearm suggest that the possessor of the firearm intended to have it available for possible use during the transaction. . . .

866 F.2d at 597 (quoting Feliz-Cordero, 859 F.2d at 254) (emphasis added); see also Hill, 967 F.2d at 905 (holding that "[p]ossession of a firearm constitutes use under 18 U.S.C. §924(c) where there is evidence 'that the defendant intended to have the firearm available for use or possible use during a crime of violence . . . and that the firearm was placed in a spot where it was readily accessible at that time.'"); United States v. Reyes, 930 F.2d 310, 312 (3d Cir. 1991) (same). This language closely parallels that used by the district court in the instant case. Accordingly, if Theodoropoulos did govern our construction of section 924(c)(1), we would hold that the district court properly instructed the jury.

Theodoropoulos, however, no longer governs. The United States Supreme Court recently issued an opinion in which it clarified the meaning of the term "use" in section 924(c)(1). Bailey v. United States, 116 S.Ct. 501, 505 (1995). In Bailey, the Court rejected the holding of Theodoropoulos and held that the "proximity and accessibility standard provides almost no limitation on the kind of possession that would be criminalized . . . ." Id. at 506. Rather, the Court held, "[Section] 924(c)(1)

5

requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." Id. at 505. The Court further explained that "[t]he active-employment understanding of 'use' certainly includes brandishing, bartering, striking with, and most obviously, firing or attempting to fire, a firearm." Id. at 508. However, "[i]f the gun is not disclosed or mentioned by the offender, it is not actively employed and it is not 'used.'" Id.

Bailey's interpretation of the "use and carry" provision demands a different inquiry from that required under Theodoropoulos. It is no longer enough that the weapon be available to the defendant; rather, it must have played an active role in the perpetration of the predicate offense beyond emboldening the perpetrator. Therefore, we hold that the district court's instruction to the jury, while accurately reflecting the law of the Third Circuit at the time, was erroneous in light of Bailey. Furthermore, to the extent that our holding in Theodoropoulos conflicts with the Supreme Court's interpretation of "use" in Bailey, Theodoropoulos is overruled.

B.

Mr. Price was also charged with the section 924 count under an aiding and abetting theory, an instruction which he also disputes. He contends that "aiding and abetting liability is inapplicable to a charge of carrying and using a firearm during and in relation to a crime of violence." Appellant's Brief at 34.

We reject this argument.  Under 18 U.S.C. § 2(a), "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal."  This section has been routinely applied in conjunction with section 924(c) to convict individuals of "aiding and abetting in using or carrying a firearm" in violation of 18 U.S.C. § 924(c).  See, e.g., United States v. Wacher, No. 93-3372, 1995 WL 757876 (10th Cir. Dec. 26, 1995); United States v. Pipola, No. 95-1264, 1995 WL 760560 (2d Cir. Dec. 22, 1995); United States v. Buchanan, 70 F.3d 818, 825 (5th Cir. 1995); Dillon v. United States, 69 F.3d 537 (6th Cir. 1995); United States v. Rivera, 68 F.3d 5, 7 (1st Cir. 1995); United States v. Easter, 66 F.3d 1018, 1023-24 (9th Cir. 1995), cert. denied sub nom. Jemerigbe v. United States, 116 S. Ct. 547 (1995), and cert. denied sub nom. Ronnie O. Lea v. United States, 1995 WL 698897 (U.S. 1996) ; United States v. Warren, 42 F.3d 647, 651 (D.C. Cir. 1994); United States v. Martin, 25 F.3d 211, 213 (4th Cir. 1994); United States v. Chandler, 996 F.2d 1073, 1105 (11th Cir. 1993), cert. denied, 114 S. Ct. 2724 (1994); United States v. Travis, 993 F.2d 1316, 1321 (8th Cir.), cert. denied, 114 S. Ct. 229 (1993), and cert. denied, 114 S. Ct. 245 (1993); United States v. Reiswitz, 941 F.2d 488, 492 (7th Cir. 1991); see also United States v. Mathis, No. 93-454-01, 1994 WL 413142 (E.D. Pa. Aug. 5, 1994).

It appears that no case in the Third Circuit has considered a conviction for violation of 18 U.S.C. § 924(c) on an "aiding and abetting" theory.  We see no reason, however, why we should

7

rule differently from every other circuit in the country, and our own district courts, and Mr. Price offers none, beyond a conclusory argument that the theory is "inapplicable." Therefore, we reject Mr. Price's argument and hold that the district court correctly instructed the jury on the "aiding and abetting" theory.

C.

We must now determine whether the district court's error in instructing the jury was harmless or requires reversal of Mr. Price's conviction on the section 924(c)(1) count. The error was one of statutory interpretation, not constitutional in nature. "We have held that non-constitutional error is harmless when 'it is highly probable that the error did not contribute to the judgment.'" United States v. Zehrbach, 47 F.3d 1252, 1265 (3d Cir.) (quoting Government of Virgin Islands v. Toto, 529 F.2d 278, 284 (3d Cir. 1976)), cert. denied, 115 S.Ct. 1699 (1995). Because we conclude that the error was harmless, we will affirm.

The section 924 charge against Thomas Price was based on two alternative theories: first, that Mr. Price himself "used" the weapon under the Theodoropoulos standard and, second, that Mr. Price aided and abetted the "use" or "carrying" of the weapon by his accomplice, Charles Stubbs. Under either theory, it is highly probable -- indeed, inevitable -- that the jury found that Mr. Price was one of the masked men who robbed the bank and, more specifically, that he was the man who jumped over the counter and collected the money while Mr. Stubbs was brandishing the gun.

8

That Mr. Stubbs both "used" and "carried" the firearm within the statutory meaning is perfectly clear, and therefore, the only remaining question is whether Mr. Price aided and abetted that use and carrying.  Because the jury had to conclude that Mr. Price was the man who entered the bank with Mr. Stubbs, we think the evidence supporting this conclusion is overwhelming, whichever theory the jury utilized to convict.  First, Mr. Stubbs testified that Mr. Price knew beforehand that a gun would be used, and the nature of the offense seems to strongly support that testimony.  Second, the use of the gun did not occur in one instant; rather, according to the evidence, Mr. Stubbs pointed the gun while Mr. Price gathered the money.  Even if Mr. Price had not known in advance that Mr. Stubbs was going to use a gun during the robbery, it seems perfectly clear that Mr. Price was aware that the gun was being used while he continued to participate in the robbery.

In other words, Mr. Stubbs was plainly using and carrying a firearm in connection with a crime of violence; Mr. Price probably knew in advance, and most certainly knew at the time, what Mr. Stubbs was doing; yet Mr. Price continued to participate in the offense.  In light of these facts, we find that it is highly probable that the error did not contribute to the judgment of the jury, and therefore we will affirm.

II.

9

Mr. Price raises several other claims in this appeal. First, he contends that the evidence was insufficient as a matter of law to sustain his conviction. Specifically, Mr. Price argues that the evidence fails to demonstrate that Mr. Price had any prior knowledge that his accomplice would be utilizing a firearm in the robbery. Appellant's Brief at 21, 24. However, Mr. Price's accomplice, Charles Stubbs, did offer testimony to this effect. Appendix at 260A. This testimony was sufficient evidence to support a finding of prior knowledge on Mr. Price's part, and therefore sufficient evidence to find him guilty of armed bank robbery and carrying or using a firearm during the armed robbery.

Second, Mr. Price argues that the court improperly charged the jury concerning the existence of Mr. Stubbs's plea agreement. Appellant's Brief at 36-37. The court charged the jury that "[t]he Stubbs plea agreement was not marked as an exhibit and was not admitted into evidence during the course of the trial." Appendix at 487A. This instruction was correct, and certainly was not an "abuse of discretion." United States v. Price, 13 F.3d 711, 724 (3d Cir.), cert. denied sub nom. Reaves v. United States, 114 S. Ct. 1863 (1994), and cert. denied sub nom. Long v. United States, 114 S. Ct. 2754 (1994), and cert. denied sub nom. Jackson v. United States, 114 S. Ct. 2754 (1994), and cert. denied sub nom. Reaves v. United States, 115 S. Ct. 155 (1994).

Finally, Mr. Price claims that the prosecutor engaged in "forensic misconduct" by improperly vouching for certain witnesses, disparaging Mr. Price's counsel, casting aspersions at the defendant and arguing facts not of record. Because Mr.

10

Price's counsel did not object to these statements at trial, we review these statements for "plain error," that is, "egregious error or a manifest miscarriage of justice." United States v. Thame, 846 F.2d 200, 204 (3d Cir.), cert. denied, 488 U.S. 928 (1988). The statements singled out by Mr. Price fall far short of violating this exacting standard.

## IV.

For the reasons outlined above, we will affirm the judgment of the district court.

11