Pedro CAMILO, Inmate No. 18411-054

v.

Art BEELER, Warden, FCI FTD East, Fort Dix, NJ 08640.

Civil Action No. 98–cv–44(JEI).

United States District Court, D. New Jersey.

Dec. 10, 1998.

Pedro Camilo, Fort Dix, NJ, pro se.

Faith S. Hochberg, U.S. Atty. by Marc A. Agnifilo, Asst. U.S. Atty., Newark, NJ, for United States.

IRENAS, District Judge.

## OPINION

Presently before this Court is petitioner, Pedro Camilo's, ("Camilo" or "Petitioner") application for habeas corpus relief under 28 U.S.C. § 2241. Camilo challenges his conviction under 18 U.S.C. § 924(c)(1)[1] for the "use" of a firearm during a drug trafficking crime, alleging that he is being wrongly incarcerated in light of the United States Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).[2] For the reasons set

---

1. Section 924(c)(1) provides that:

 Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime ... be sentenced to imprisonment for five years, and [increased terms for particular types of weapons].

2. The Supreme Court's holding in *Bailey* unleashed a veritable flood of habeas corpus applications from individuals convicted under the pre-*Bailey* interpretation of 18 U.S.C. § 924(c)(1). This wave of applications was further complicated by Congress' sweeping reform of existing habeas corpus law under the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, codified at

forth below, this Court will deny Petitioner's application for habeas corpus relief.

## I.

### A.

On December 7, 1988, police officers and agents from the Drug Enforcement Agency executed a search warrant at a first floor apartment in the Bronx, New York. The warrant was issued after an undercover investigation revealed continuing drug sales out of apartment 2F, by Camilo and three others, Ramon Salazar ("Salazar"), Manuel DeJesus ("DeJesus"), and Juan Ramon Rodriguez ("Rodriguez"). During the execution of the warrant, Rodriguez, the lookout for the drug operation, fired a .38 caliber silver plated revolver into the wall of apartment 2F.

By telephone, police subsequently obtained a second warrant to search apartment 3D, a second floor apartment in the same building. Apartment 3D was identified by the undercover officer who had conducted the investigation as the source of the drugs actually sold in apartment 2F. In apartment 3D the police found and arrested both Camilo and Salazar. Salazar was arrested in the living room of apartment 3D, directly in front of a sofa on which there was a loaded, black, .45 caliber semi-automatic pistol. Camilo was arrested in the bathroom of apartment 3D, away from the .45 caliber pistol. Crack cocaine and cocaine powder, cutting agents, a scale, drug records, and more than $17,000 in cash were also found in apartment 3D. According to the Government, drugs were not sold directly out of apartment 3D.

Petitioner was named in four counts of a nine count indictment. Three counts charged offenses related to illegal narcotics. The remaining count charged that "during and in relation to a crime of violence and a drug trafficking ... [Camilo] did use and

carry firearms." *See* Indictment, Count 7. This count references not only § 924(c)(1), but also the aiding and abetting provisions of 18 U.S.C. § 2.

At trial, the Government relied upon the testimony of Rodriguez, who chose to plead guilty and cooperate rather than proceed to trial along with Camilo, Salazar and DeJesus. Rodriguez testified that, as the lookout for the drug operation, he was given the silver .38 caliber revolver by Camilo to "fire a warning shot" if anyone tried to disturb the drug sales. Rodriguez also testified that he "always saw" Camilo with a gun that he believed to be a black .45 caliber semi-automatic pistol. The Government alleges that this pistol was the same pistol found on the sofa in Apartment 3D. The trial court also heard testimony from the undercover officer who conducted the "buys" leading to the warrant. He testified that both Rodriguez and DeJesus handled the .38 caliber revolver during the drug sales.

There seems little doubt that in firing the warning shot Rodriguez "used" the .38 caliber handgun during and in relation to a drug crime. Since petitioner furnished the weapon to Rodriguez and was charged with aiding and abetting under 18 U.S.C. § 2, the government might have relied on those facts to obtain a conviction on the seventh count of the indictment. However, in its bill of particulars, the Government argued that Camilo used the .45 caliber semi-automatic pistol found in apartment 3D in furtherance of the drug trafficking operation.[3] At the time of Camilo's 1989 trial, the government's position was consistent with prevailing Second Circuit interpretations of the word "use" in prosecutions under § 924(c)(1). *See United States v. Santos*, 64 F.3d 41, 45 (2d Cir.1995), *vacated and remanded in light of Bailey v. United States*, 516 U.S. 1156, 116 S.Ct. 1038, 134 L.Ed.2d 186 (1996).

---

28 U.S.C. §§ 2241–2266. *See, e.g., Triestman v. United States*, 124 F.3d 361, 363 (2d Cir.1997) (noting that these "substantial modifications in the criminal law ... [have] spawned abundant litigation.").

**3.** The government's response to a defense request for particulars stated that, "[a]t the time of

the Agents' entry into the apartment, a loaded .45 caliber pistol was found inside the apartment, along with Camilo, a quantity of cash and cocaine." (*See* Letter from A.U.S.A. Elliot Peters to defense counsel Peter Neufeld, dated February 2, 1989.)

The jury found Salazar, DeJesus and Camilo guilty on all the drug-trafficking and firearms counts. On September 22, 1989, Camilo was sentenced to ten years imprisonment on the conspiracy and substantive narcotics charges, to run concurrently, and five years imprisonment on the § 924(c) firearms charge, to run consecutively. Camilo's conviction and sentence were affirmed by the Second Circuit on August 16, 1990.

### B.

In April, 1992, Camilo filed his first habeas corpus petition in the Southern District of New York under 28 U.S.C. § 2255 in which he attacked his sentence under the Sentencing Guidelines.[4] This petition was dismissed. In October, 1996, Camilo filed a second petition under § 2255 alleging that, in light of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), his conviction under Count Seven was no longer valid.

In *Bailey*, the United States Supreme Court held, contrary to the prevailing authority among the Circuits, that "use" of a firearm under § 924(c)(1) required more than mere possession. *See Bailey*, 516 U.S. at 143–44, 116 S.Ct. 501. Instead, the Court held that § 924(c)(1) requires "active employment" of a firearm in order to sustain a conviction. *Id.* at 148, 116 S.Ct. 501. The Court stated that "active employment" includes "brandishing, displaying, bartering, striking with, [or] firing or attempting to fire." *Id.* Merely having a firearm stored or

kept near drugs or drug proceeds is not enough to sustain a conviction under the "use" prong of § 924(c)(1). *Id.* Additionally, having a firearm "at the ready" is not enough to warrant punishment under § 924(c)(1). *Id.* at 149–50, 116 S.Ct. 501.[5]

The District Court transferred Camilo's petition to the Second Circuit to obtain the necessary certification to file a second or successive petition under AEDPA. *See* 28 U.S.C. §§ 2244(b)(1)(3); 2255. On January 14, 1997, the Second Circuit denied Camilo's application but stayed the final dismissal of his petition pending the outcome of *Triestman v. United States*, 124 F.3d 361 (2d Cir. 1997). In *Triestman*, the petitioner sought certification from the Second Circuit in order to proceed with a successive § 2255 petition for post-conviction relief as required by AEDPA. Treistman wanted to challenge his § 924(c)(1) conviction in light of *Bailey*. The Second Circuit held that, although AEDPA did foreclose the availability of post-conviction relief under § 2255, petitioner could file a habeas corpus petition under § 2241 in order to bring his *Bailey* claim. *Id.* at 377–78. *Triestman* was decided on August 28, 1997, and on the same day Camilo's § 2255 petition was dismissed as successive. The *Triestman* decision left open the possibility that Camilo could file his *Bailey* claim under § 2241(c)(3). *See id.* at 380. On January 14, 1998, Camilo properly filed a § 2241 petition before this Court. *See In Re Dorsainvil*, 119 F.3d 245, 251 (3d Cir.1997).

---

**4.** Camilo challenged the imposition of his sentence under the Sentencing Guidelines as unconstitutionally vague and discriminatory in that the Guidelines punished sales of crack cocaine more severely than powder cocaine.

**5.** *Bailey* was actually two consolidated cases involving defendants Roland Bailey and Candisha Robinson. In Bailey's case the weapon was recovered from the trunk of a car in which drugs were found in the passenger compartment. In Robinson's case the gun was retrieved from a locked trunk in the bedroom closet of a one bedroom apartment in which drug sales had been made to an undercover officer. Although the incitement in both cases had charged "use" and "carry", the Court considered only the "use" charge and remanded the case to the court of appeals to consider whether the convictions could be upheld on the "carry" prong. *Bailey*,

516 U.S. at 150, 116 S.Ct. 501. On remand the D.C. Circuit directed the District Court to dismiss the § 924(c) conviction in the Robinson matter, *see United States v. Robinson*, No. 92–3062, 1996 WL 103735 at *1 (D.C.Cir. Jan.26, 1996), and in the Bailey matter remanded the case to the District Court for "further proceedings not inconsistent with the mandate of the Supreme Court", *see United States v. Bailey*, No. 90–3119, 1996 WL 103727 at *1 (D.C.Cir. Jan.26, 1996).

Although this court is unaware of the ultimate outcome in the Bailey matter, in *Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) the Supreme Court held that the word "carry" as used in § 924(c)(1) is not limited to the carrying of firearms on the person, but also applies to a person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car. *Id.* 118 S.Ct. at 1913–1914.

In its original response to Camilo's petition, the government conceded that, in light of *Bailey,* Camilo's application should probably be granted with a remand back to the Southern District of New York for resentencing. (Letter Brief of Government, dated May 15, 1998, at 6.) However, while Camilo's petition was under consideration, the Supreme Court held in *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), that petitioners who failed to raise *Bailey*-style claims (prior to the Court's decisions in *Bailey*) on direct appeal have procedurally defaulted without cause, and must therefore demonstrate "actual innocence" in order to be granted habeas relief. *Id.* 118 S.Ct. at 1611 (citing *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2643, 91 L.Ed.2d 397 (1986)). The Court reasoned that because the "Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession,'" *id.,* a defendant is not excused from a failure to raise a *Bailey*-style claim on direct appeal merely because the claim seemed futile at the time. *Id.* (citing *Engle v. Issac,* 456 U.S. 107, 130, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)). In response to *Bousley,* the government withdrew its concession and argued that Camilo should not be released absent a showing of "actual innocence." (Letter Brief of Government, dated June 9, 1998, at 2–3.)

## II.

### A.

Camilo argues that he meets *Bousley's* "actual innocence" standard because there is no direct testimony linking him to the .45 caliber pistol on either the 6th or 7th of December, 1988. (Letter Brief of Petitioner, dated June 25, 1998 at 1.) Camilo claims that even though Rodriguez testified that he had "seen" Camilo with the black .45 caliber pistol, Rodriguez had also witnessed Salazar with the same gun. (*Id.*) He argues that there is no fingerprint evidence which demonstrates that he carried the gun on either date. (*Id.*) Finally, Camilo contends that no reasonable juror could have voted to convict him of having "used" a firearm on or about December 7, 1988, because he was arrested in the bathroom of apartment 3D, away from the .45 caliber pistol.

In *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), the Supreme Court held that a petitioner who cannot demonstrate "cause and prejudice" for a procedurally defaulted claim, may not collaterally attack a § 924(c)(1) conviction unless they can show "actual innocence." *Bousley,* 523 U.S. 614, 118 S.Ct. at 1611. To succeed in his petition then, Camilo "must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at ——, 118 S.Ct. at 1611 (internal quotes omitted) (citing *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U. Chi. L.Rev. 142, 160 (1970)).

The Third Circuit has indicated that *Bousley's* actual innocence test applies to this type of *Bailey* claim. *See United States v. Ramos,* 147 F.3d 281 (3d Cir.1998) (remarking in dicta that a *Bailey* claim, properly raised, would be subject to the actual innocence test as refined by *Bousley*). Other Circuits faced with the issue have reached similar conclusions. *See Hilliard v. United States,* No. 96–6291, 157 F.3d 444, 1998 WL 639172 (6th Cir. Sept.21, 1998) (holding that petitioner must demonstrate actual innocence to succeed in his *Bailey* claim); *United States v. Sorrells,* 145 F.3d 744 (5th Cir.1998) (holding that petitioner seeking relief for a *Bailey* claim on collateral review must demonstrate "factual innocence"); *United States v. Benboe,* No. 97–35566, 157 F.3d 1181, 1998 WL 682172 (9th Cir. Sept.30, 1998) (same); *United States v. Powell,* No. 97–1449, 159 F.3d 500, 1998 WL 730159 (10th Cir. Oct.20, 1998) (same).

### B.

The resolution of Camilo's petition requires this Court to first isolate the precise charges the Petitioner faced in his original trial. Second, this Court must determine what should have been the proper instruction to the jury concerning those charges. Final-

ly, this Court must decide, in light of all the evidence developed at trial, whether a properly-instructed, reasonable juror, could have voted to convict. This multi-part inquiry gives full effect to the Supreme Court's interpretation of "actual innocence." In *Schlup v. Delo,* the Court wrote:

> The meaning of actual innocence ... does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather *the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do.* Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably would have voted to find him guilty beyond a reasonable doubt.

513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (emphasis supplied). While *Schlup* speaks of "new evidence", the analog to petitioners raising post-*Bailey* claims is apt. Just as "new evidence" is often the basis for a colorable showing of "actual innocence", an interpretation of a statute by the Supreme Court which renders certain conduct no longer criminal performs much the same function. In either case, a defendant runs the risk of being convicted for "an act that the law does not make criminal." *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974). Therefore, in order to make the required "probabilistic"

evaluation of the actions of properly instructed jurors, *see Schlup,* 513 U.S. at 329, 115 S.Ct. 851, the indictment, evidence and jury charge must be examined before a petition for habeas corpus on the grounds of "actual innocence" will be decided.

## III

### A.

■ This Court's analysis begins with the indictment. Count Seven of the superseding indictment charged Camilo, Salazar, DeJesus and Rodriguez with using and carrying firearms, "during and in relation to a crime of violence and a drug trafficking crime" in violation of both 18 U.S.C. § 924(c)(1), and 18 U.S.C. § 2. Under the plain terms of the indictment, Camilo's conviction can be sustained if, on or about December 7, 1988, he either "used" a firearm consistent with *Bailey,* or if he aided and abetted the "use" of a firearm consistent with *Bailey. See Bailey,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).[6]

In evaluating Camilo's culpability under this indictment, this Court is not limited to the evidence concerning the .45 caliber semi-automatic found in the upstairs apartment. Instead, the entire record should be examined to determine whether Camilo is indeed "factually innocent" on the § 924(c)(1) charge, as well as the § 2 aiding and abetting charge. *Bousley,* 523 U.S. at —— ——, 118 S.Ct. at 1611–12. This Court may, therefore, also weigh the evidence related to the .38 caliber revolver admittedly used by Rodriguez while acting as the lookout for Camilo's drug operation in apartment 2F.[7]

---

**6.** Additionally, this Court might also uphold Camilo's conviction if, on or about December 7, 1988, he either "carried" a firearm consistent with *Muscarello,* or he aided and abetted the "carrying" of a firearm consistent with *Muscarello. See Muscarello,* 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). However, because we will hold that Camilo used (or aided and abetted the use of) a weapon, it will not be necessary to consider the "carry" prong of § 924(c)(1).

**7.** It makes no difference that the Government chose not to pursue the theory at trial that Camilo could be convicted for merely aiding and abetting the use of the .38 caliber revolver by Rodriguez. *Bousley* allows the introduction of new

evidence in an "actual innocence" case where the validity of a plea bargain was at issue. *Bousley,* 523 U.S. at —— ——, 118 S.Ct. at 1611–12. This Court finds no fundamental distinction between the introduction of new evidence to fully test the validity of a plea bargain and the examination by this Court of a different theory of the case which conforms to the evidence of record. Indeed, the indictment clearly alleges a violation of § 924 based upon either use, carrying, or aiding and abetting the same. Simply because the government chose, in its response to the request for a bill of particulars, to limit itself to trying the charge based upon the .45 caliber semi-automatic, this Court is not similarly limit-

The next step in this Court's inquiry is to determine what constitutes a proper jury instruction of "use" under § 924(c)(1), in light of *Bailey* and *Muscarello*. A properly instructed jury would be told that to "use" a firearm during and in relation to a crime means to employ the firearm actively, such as brandishing, displaying, bartering, striking with or firing or attempting to fire the firearm. Additionally, the firearm must have played a role in the crime or must have been intended by the defendant to play a role in the crime. *See Bailey v. United States,* 516 U.S. 137, 148, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal." 18 U.S.C. § 2(b). In *United States v. Price,* the Third Circuit remarked that § 2 "has been routinely applied in conjunction with section 924(c) to convict individuals of aiding and abetting in using or carrying a firearm." 76 F.3d 526, 529 (3d Cir.1996). In *Price,* the Court of Appeals upheld the defendant's conviction for aiding and abetting the use of a gun during a bank robbery because the evidence demonstrated that the defendant, "probably knew in advance, and most certainly knew at the time what [his accomplice] was doing; yet Mr. Price continued to participate in the offense." *Id.* at 530.

The Third Circuit has explained the proper instruction for aiding and abetting a violation of § 924(c)(1) under 18 U.S.C. § 2, would be:

[i]n order to aid and abet another to commit a crime, it is necessary that the accused willfully associate himself in some way with the criminal venture, and willfully participate in it, as he would in something he wishes to bring about; that is to say, that he willfully would seek, by some act or omission of his, to make the criminal venture successful.

ed in its endeavor to find either "actual innocence" or the lack thereof.

**8.** Q: Now, when they [agents from the police and the DEA] were banging on the door, what did you do?

*United States v. Waller,* 607 F.2d 49, 51 (3d Cir.1979) (quoting with approval the jury instructions of the district judge). The Court must now determine whether, in light of the evidence developed at trial, a reasonable, properly instructed juror could have voted to convict Camilo on the § 2 aiding and abetting charge.

 A conviction under 18 U.S.C. § 2 can be sustained if the defendant knew a firearm would be used by a co-conspirator in the drug trafficking offense and willingly took some action to facilitate that use. *See United States v. Bennett,* 75 F.3d 40, 45 (1st Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 130, 136 L.Ed.2d 79 (1996); *United States v. Sorrells,* 145 F.3d 744, 754 (5th Cir.1998). It must be conceded that Rodriguez "used" the gun in violation of

§ 924(c)(1) as interpreted by *Bailey.* The evidence shows that Camilo gave Rodriguez the .38 caliber revolver with specific instructions to fire the gun as a warning if the drug operation was threatened.[8] During the raid on December 7, Rodriguez thought that the pounding he heard on the door was prelude to a robbery and therefore he fired his gun pursuant to Camilo's orders. (Tr. at 251.) Firing a gun in connection with a drug-trafficking crime clearly fits within the Supreme Court's definition of use set forth in *Bailey. See Bailey,* 516 U.S. at 148, 116 S.Ct. 508.

There is also evidence that Rodriguez was seen by the undercover officer holding the revolver during the initial drug sales. (Tr. at 64.) The undercover officer testified:

A: I remember Rodriguez opening the door and I observed a silver-plated revolver, while the other individual, which I referred to in my reports as Slim, was holding a black pistol.

Q: When you say you saw a silver-plated revolver, was Rodriguez holding it?

A: Well, I, I shot into the air, because I had ordered [sic] from Camilo to shoot like that into the air if I thought a robbery was about to be committed and I though [sic] this was going to be a robbery, so I shot into the air. (Tr. at 251.)

A: That is correct.

(Tr. at 64–65.)

Rodriguez' display of the .38 caliber revolver during the drug sales on or about December 7, 1988, fits squarely within the confines of *Bailey. See Bailey,* 516 U.S. at 148, 116 S.Ct. 508.

Having reviewed the evidence, this Court finds that Camilo cannot show "factual innocence" as required by *Bousley.* By giving Rodriguez the .38 caliber pistol and instructing him to use it in connection with the sale of illegal narcotics Camilo could have been found guilty by a reasonable jury of violating 18 U.S.C. § 2 by aiding and abetting such use by Rodriguez.[9]

## B.

Camilo was convicted under count one of the indictment of conspiring to violate 21 U.S.C. § 841(b)(1)(C).[10] The indictment provides that one of the overt acts committed in furtherance of this conspiracy was that, "On or about December 7, 1988, JUAN RAMON RODRIGUEZ, the defendant, discharged a pistol inside apartment 2F, 2315 Walton Ave., Bronx, New York."

When charging a jury about Camilo's possible criminal liability for the § 924(c)(1) charge contained in count seven of the indictment, a properly instructed jury would have been told that a defendant is liable for a substantive offense committed by a coconspirator if (i) that crime was committed pursuant to a common plan and understanding, (ii) the defendant was a member of the conspiracy at the time the crime was committed and (iii) the defendant could have reasonably foreseen that the substantive crime might be committed by his coconspirators. *See* Leonard B. Sand et al., *Modern Federal Jury Instructions (Criminal),* ¶ 19.03.

■ A defendant convicted of a conspiracy is liable for the reasonably foreseeable acts of his coconspirators committed in furtherance of the conspiracy. *United States v. Ramos,* 147 F.3d 281, 286 (3d Cir.1998) (citing *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946)). Additionally, the Third Circuit has held that a defendant may be found guilty of violating § 924(c)(1) under a *Pinkerton* theory of liability. *Id.* (citing *United States v. Casiano,* 113 F.3d 420, 427 (3d Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 221, 139 L.Ed.2d 155 (1997)). "As long as [a conspirator's] action was within the purview of the conspiracy, his coconspirators are liable for his gun as if they had carried the firearm themselves." *United States v. Gonzalez,* 918 F.2d 1129, 1135 (3d Cir.1990), *cert. denied,* 499 U.S. 982, 111 S.Ct. 1637, 113 L.Ed.2d 733 (1991). This rule, according to the Third Circuit, is unaffected by the Supreme Court's holding in *Bailey. See Casiano,* 113 F.3d 420, 427.

■ As noted earlier, in using the .38 caliber revolver to fire a warning shot when the police arrived, Rodriguez was acting as a conspirator furthering the aims of the conspiracy. Since his actions were in accordance with prior instructions from Camilo, there is also no doubt that petitioner could foresee that the weapon would be used in exactly the manner it was used.

Far from demonstrating factual innocence, the record contains sufficient evidence from which a properly instructed jury could have found petitioner guilty of a "use" violation under § 924(c)(1) on a *Pinkerton* theory of liability.

## IV.

A reasonable and properly instructed jury could have found plaintiff guilty on count seven of the indictment either as an aider and abetter under 18 U.S.C. § 2, or guilty of a substantive violation of § 924(c)(1) as a coconspirator under *Pinkerton.* Accordingly, Camilo's petition for a writ of habeas

---

9. The sentence for aiding and abetting is the same as that for the underlying offense. 18 U.S.C. § 2(b)( aider and abettor "punishable as a principal"); *U.S. Sentencing Guidelines Manual* § 2X2.1 (1998)(aider and abettor offense level same as for underlying offense).

10. 21 U.S.C. § 841(a)(1) makes it "unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance."

corpus is denied. An appropriate order will be entered on an even date herewith.