

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-18-2006

# USA v. Carter

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3782

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Carter" (2006). *2006 Decisions.* Paper 1258.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1258

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-3782

UNITED STATES OF AMERICA

v.

DENNIS WILLIAM CARTER


Dennis Carter,

Appellant

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Judge: The Honorable Mary A. McLaughlin
District Court No.: 03-cr-00703

---

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 30, 2006

Before: SMITH and COWEN, *Circuit Judges,*
and THOMPSON, *District Judge**

(Filed: April 18, 2006 )

---

OPINION OF THE COURT

---

*The Honorable Anne E. Thompson, Senior District Judge for the District of New
Jersey, sitting by designation.

SMITH, *Circuit Judge*.

Appellant Dennis Carter was indicted, tried and convicted by a jury, and sentenced for violating: (1) 18 U.S.C. § 2133(d) (bank robbery) and § 2 (aiding and abetting); and (2) 18 U.S.C. § 924(c) (using and carrying a firearm during and in relation to a crime of violence) and § 2 (aiding and abetting). Carter has appealed: (1) the District Court's denial of Carter's Motion to Dismiss the Indictment, based on the allegation that the government violated the terms of a proffer letter when it revealed Carter's proffered statements and information to third parties; (2) the District Court's admittance of the testimony of an expert on boot prints as well as the District Court's limitations on the defense's cross-examination of this witness; and (3) the District Court's denial of Carter's Motion for Judgment of Acquittal pursuant to Fed. R. Crim. Pro. 29 with respect to his 18 U.S.C. § 924(c) count. We find no merit to Carter's claims and will affirm the District Court's judgment with respect to his conviction. Carter rightly argues, however, that he is entitled to resentencing in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Consequently, we will vacate the District Court's judgment as to Carter's sentence and remand for resentencing.[1]

I.

On the morning of July 10, 2003, three men dressed in black female Muslim

---

[1]The District Court had jurisdiction of this federal criminal case pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction over Carter's conviction pursuant to 28 U.S.C. § 1291 and over his sentence pursuant to 18 U.S.C. § 3742.

garments and with their faces covered by veils robbed a branch of the National Penn Bank in Philadelphia. According to the testimony of the bank manager, one of the robbers entered the bank manager's office, pointed a handgun at her, and duct-taped her ankles. According to the testimony of a bank teller, a second robber pointed a handgun at her and jumped over the teller counter.[2] When the teller informed the robber that all of the bank's money was in the vault, he directed her to the vault. After this second robber discovered that the teller had only part of the vault's combination and that the bank manager had the other part, the first robber carried the duct-taped bank manager to the vault. Together, the bank manager and the teller were able to open the vault, and the robbers placed approximately $175,995 in a white shopping bag before fleeing the bank and heading toward nearby train tracks.

In the meantime, the third robber forced the bank's security guard into a lunchroom and down onto the floor. The security guard did not see whether the third robber had a handgun, but bank surveillance photos showed the third robber holding a handgun. This third robber fled the bank lobby separately from the other two robbers.

That same morning, a commuter waiting outside a nearby train station in her parked car witnessed a man dressed in black Muslim garments, sneakers, and latex gloves coming up the train station stairs. He was followed by two other men also wearing Muslim garments and latex gloves, one of whom was carrying a white bag. They ran to a

[2]During the investigation of the crime scene, a boot print impression was lifted from the teller counter.

3

white Pontiac parked nearby. The witness called 911, and as the white Pontiac drove by, she got out of her car and described to the dispatcher the white Pontiac, including its license tag number, EYW-2468. Carter was the registered owner of this white Pontiac.

The FBI agents responding to the scene of the robbery subsequently learned that the white Pontiac had been issued a traffic summons with an address of 4534 Old York Road in Philadelphia.[3] Approximately six hours after the robbery, the white Pontiac was found parked near this address. As the agents were conducting surveillance of the house at 4534 Old York Road, a man, later identified as Carter, pulled up in a gold Hyundai and entered the house. He subsequently exited the house and got back into the Hyundai. The agents approached Carter as he was entering the Hyundai and asked him if he was Dennis Carter. Carter denied his identity and gave the agents a false name. Carter was then handcuffed and patted down. Carter had $2,692 on his person as well as keys to a lockbox. He was also wearing Timberland boots. A later search of the gold Hyundai found a .45 caliber Taurus handgun in a white shopping bag.

The agents also obtained a search warrant for 4534 Old York Road. They found two sets of black Muslim garments, latex gloves, and a lockbox under Carter's bed. Using the key found in Carter's possession, the agents opened the lockbox and found $53,000 in cash, wrapped in National Penn Bank wrappers. The wrappers were

---

[3]It was later determined that Carter had been residing at this address with his girlfriend.

subsequently found to have Carter's fingerprints on them.[4]

The government then had two proffer meetings with Carter, before which he signed a standard proffer letter. The letter explained that any statements or information provided by Carter during his proffer discussions would not be "used directly against [him] in any criminal case," but also provided that "the government may make derivative use of, and may pursue investigative leads suggested by, statements made or information provided" during the proffer discussions. The government subsequently failed to reach an agreement with Carter, citing his lack of cooperation.

FBI Special Agent John Kitzinger then approached one of Carter's alleged accessories, Abdul Bilal, and the family of another alleged accessory, Sean Kelley, in an apparently unsuccessful attempt to secure their cooperation. Agent Kitzinger revealed to these third parties that Carter had identified Bilal and Kelley as his coconspirators.

At Carter's trial, the government offered the physical evidence described above as well as the testimony of the bank employees. Additionally, the government offered the testimony of Sandra Wiersema, an FBI employee qualified as an expert in boot prints, who compared the Timberland boots Carter was wearing at the time of his arrest to a photograph of the boot print impressions found on the teller counter. Wiersema testified that Carter's boots could have made the impressions. The defense attempted to cross-

---

[4]Another pair of Timberland boots was found outside of 4534 Old York Road, but the boots Carter was wearing at the time of his arrest, and not the boots found outside the house, were compared to the boot print impressions taken from the teller counter.

examine Wiersema with pictures of other Timberland boots obtained from the internet, asking her if these other boots also could have made the impressions. The District Court cut short this cross-examination after Wiersema explained that she was only testifying that Carter's boots could have made the impressions, and not offering an opinion as to whether other kinds of Timberland boots could have made the impressions as well.

## II.

With respect to Carter's Motion to Dismiss the Indictment, we find no error[5] in the District Court's judgment that Carter was entitled to no relief for the alleged violations of the proffer letter. Agent Kitzinger's discussions with Abdul Bilal and the family of Sean Kelley did not constitute direct use of the information provided by Carter during the proffer session against him in his criminal case. Rather, those discussions constituted use of that information for the purpose of developing derivative evidence. *See United States v. Pielago*, 135 F.3d 703, 710-711 (11th Cir. 1998) (holding that using the defendant's proffer statements to indict a third party who subsequently pled guilty and testified against the defendant did not violate a proffer agreement because the third party's testimony was by definition "derivative evidence" and the government did not introduce the defendant's actual statements or proffered information as evidence at trial). Accordingly, the government complied with the terms of the proffer letter because it

---

[5]With respect to a district court's judgment on a motion to dismiss the indictment, we exercise plenary review over legal conclusions and review factual findings for clear error. *See United States v. Nolan-Cooper*, 155 F.3d 221, 229 (3d Cir. 1998).

made only derivative use of Carter's statements,[6] and consequently Carter was entitled to no remedy.[7]

We also find that the District Court did not abuse its discretion[8] by admitting the testimony of the Sandra Wiersema, the boot print expert. Whether the boots Carter was wearing when he was arrested six hours after the robbery could have made the boot print impressions found on the teller counter was probative of Carter's alleged participation in the robbery, and expert testimony aiding the jury in making such comparisons has long been judged admissible by the federal courts. *See United States v. Rose*, 731 F.2d 1337, 1345-47 (8th Cir. 1984) (holding that there was no error in admitting expert testimony comparing the defendant's shoe to a shoe print lifted from a credit union teller counter after an armed robbery by masked men). Further, the defense's attempted cross-examination of this expert with pictures of other Timberland boots that could have made

---

[6]Carter originally also objected to the government's inclusion of a summary of his proffer statements in its Trial Memorandum. In his brief on appeal, Carter waived this issue, but we note that the proffer letter specifically allowed the government to use Carter's proffer statements during the trial in the event that he testified as a witness and his testimony was materially different from his proffer statements. Accordingly, including a summary of his statements in the government's Trial Memorandum in order to notify the District Court of the possible issues arising from such permissible uses also did not constitute direct use of his statements against him in violation of his proffer letter.

[7]Because there was no violation of the proffer letter, we need not consider whether dismissing the indictment would be an appropriate remedy for such a violation.

[8]Where a district court's ruling to admit or exclude evidence is based on a permissible interpretation of the Federal Rules of Evidence, we review that determination for abuse of discretion. *See United States v. Sokolow*, 91 F.3d 396, 402 (3d Cir. 1996).

the impressions was not relevant to the expert's testimony that Carter's boots could have made the impressions, and therefore the District Court did not abuse its discretion[9] by limiting the defense's cross-examination of this witness to relevant matters.

Finally, with respect to Carter's Motion for Judgment of Acquittal on his 18 U.S.C. § 924(c) counts (using and carrying a firearm during and in relation to a crime of violence),[10] in light of the physical evidence linking Carter to the crime–including the Timberland boots he was wearing, the handgun found in a white shopping bag in the gold Hyundai, and the black Muslim robes, latex gloves, and $53,000 in National Penn Bank money wrappers with Carter's fingerprints on them found at 4534 Old York Road–and in light of the fact that his vehicle was used as the getaway vehicle and then found near his residence hours after the robbery, we hold that a reasonable trier of fact could have concluded beyond a reasonable doubt that Carter was one of the three robbers. Further, in light of the handgun found in the gold Hyundai, as well as the testimony of the bank manager and bank teller and the evidence provided by the bank surveillance photos–which together implied that all three robbers were armed with handguns–we hold

_____

[9]A district court may impose reasonable limits on cross-examination based on concerns about factors such as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant," and we review a district court's decision to limit cross-examination for abuse of discretion. *See United States v. Chandler*, 326 F.3d 210, 219 (3d Cir. 2003).

[10]On review of a Rule 29 motion, we will sustain a jury verdict if, viewing the evidence in a light most favorable to the government, a rational trier of fact could have found that the government established the elements of the crime beyond a reasonable doubt. *See United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998).

8

that a reasonable trier of fact could have concluded beyond a reasonable doubt that Carter was armed with a handgun during the robbery.[11]  Accordingly, a reasonable trier of fact could have concluded that the government had established all of the elements of 18 U.S.C § 924(c) beyond a reasonable doubt, and the District Court properly denied Carter's Motion for Judgment of Acquittal.

In sum, for the reasons set forth above, we will affirm the District Court's rulings with respect to Carter's Motion to Dismiss the Indictment, the evidentiary issues, and Carter's Motion for Judgment of Acquittal.  As the government conceded in its brief, however, Carter is entitled under our precedents to a remand for reconsideration of his sentence in light of the Supreme Court's decision in *Booker*.  *See United States v. Davis*, 407 F.3d 162, 165-66 (3d Cir. 2005).  Accordingly, we will also vacate the District Court's judgment as to Carter's sentence and remand for resentencing.

---

[11]Additionally, we note that in light of the nature of the crime–the robbery of a bank–and the extended use of firearms during the crime, a reasonable trier of fact could have concluded beyond a reasonable doubt that Carter had aided and abetted the use of firearms even if he did not personally carry a handgun.  *See United States v. Price*, 76 F.3d 526, 529-30 (3d Cir. 1998).