

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2007

# USA v. Whitfield

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4870

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Whitfield" (2007). *2007 Decisions.* Paper 1660.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1660

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-4870

UNITED STATES OF AMERICA

v.

CHARLES WHITFIELD,

Appellant

Appeal from the United States District Court
for The Eastern District of Pennsylvania
(02-cr-00772-2)
District Court: The Honorable Timothy J. Savage

Submitted Under Third Circuit LAR 34.1(a)
January 8, 2007

Before: McKEE, AMBRO, and FISHER, *Circuit Judges*

(Filed: February 7, 2007)

OPINION

McKEE, *Circuit Judge*.

Charles Whitfield appeals the judgment of sentence and conviction that was

entered following his conviction for conspiracy and interstate transportation of stolen

property. For the reasons that follow, we will affirm the district court's judgment.

**I.**

Because we write primarily for the parties, it is not necessary to recite the facts of this case in detail. Rather, we note only briefly that the charges in this case stemmed from a criminal conspiracy that operated from July of 1999 through July of 2001 and that was involved in over fifty burglaries, armed robberies, and related crimes in Pennsylvania and New Jersey. Whitfield was involved, with three other co-defendants, in only one of these burglaries; the burglary of Monster Beverage in Glassboro, New Jersey, on March 19, 2001. He was the driver and lookout.

On appeal, Whitfield argues that evidence of his participation as a "lookout" in that single burglary was not sufficient to convict him of the larger conspiracy perpetuated by Christopher Plytas and others. He also alleges that the government's failure to disclose newly discovered evidence relating to the credibility of one of his co-conspirators before trial requires a new trial.

## II.

To prove conspiracy, the government must establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal. *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999). Nevertheless, we have consistently held that:

> [t]he government need not prove that each defendant knew all of the conspiracy's details, goals, or other participants . . . . However, the government must proffer sufficient evidence from which a jury could have concluded that each . . . transaction in which [the defendant] was involved was a step in achieving the conspiracy's common goals . . . .

2

*Id.* (internal citations and quotation marks omitted); *see also United States v. Adams*, 759 F.2d 1099, 1114 (3d Cir. 1985) (knowledge of all the particular aspects, goals, and participants of a conspiracy is not necessary to sustain a conviction). Even an occasional participant in the scheme "can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation." *Id.* at 198.

Whitfield concedes that the evidence is sufficient to prove that he shared the objective of burglarizing Monster Beverage. He disputes that he knew that the burglary was part of a larger conspiracy involving Plytas and others, and claims that the evidence is insufficient to establish his involvement in that larger conspiracy beyond a reasonable doubt. The record refutes this claim.

The government's evidence included the testimony of co-conspirator, William Myrick. He testified that Whitfield "knew basically how we was getting our money . . . by either buying [sic] or burglarizing something." Administrative Record ("A.R.") at 717.[1] Another co-conspirator, Christopher Plytas, testified that Whitfield was "excited [to be included] because he [knew] he was going to be paid good." *Id.* We realize that Plytas's testimony does not establish that Whitfield knew of any greater conspiracy

---

[1] The government asserts that a typographical error exists in the transcript. The prosecutor recalls that Myrick testified only to "burglarizing," and not to "buying." Whitfield does not contest the government's assertion. Indeed, the transcript does not make sense otherwise.

because he could have been excited about getting paid from the Monster Beverage burglary alone. However, Myrick's testimony supports an inference that Whitfield knew that Plytas and Myrick were involved in a larger burglary conspiracy and that he willingly furthered the criminal objective of that conspiracy by participating in the Monster Beverage burglary. *See Blumenthal v. United States*, 332 U.S. 539 (1947).

In *Blumenthal*, three defendants were convicted of conspiring to sell whisky at prices that violated the Emergency Price Control Act. In affirming their convictions, the Court reasoned that, although each salesman "aided in selling only his part [of the whisky]," each "knew that the lot to be sold was larger and thus that he was aiding in a larger plan." *Id*. at 559. The Court explained: "[b]y [defendants'] separate agreements, if such they were, they became parties to the larger common plan, joined together by their knowledge of its essential features and broad scope, though not of its exact limits, and by their common single goal." *Id*. at 558.

Similarly, in *United States v. Theodoropoulos*, 866 F.2d 587, 594 (3d Cir. 1989), overruled on other grounds by *United States v. Price*, 76 F.3d 526 (3rd Cir. 1996), six defendants were charged with conspiracy to distribute drugs. Defendant Barrera argued that he had only been an occasional supplier and did not himself know all the details of the broader conspiracy. We disagreed. We concluded that his knowledge of the larger conspiracy was demonstrated by evidence that a third party had complained about the quality of cocaine he had supplied. The complaint was evidence that his co-defendant had distributed the drugs, as well as Barrera's willingness to continue to provide cocaine

4

for his co-defendant to distribute. *Id*.

In arguing that the evidence here was not sufficient, Whitfield relies in part upon the reasoning of *United States v. Cartwright*, 359 F.3d 281 (3d Cir. 2004). There we held that the defendant's involvement solely as a lookout could not sustain his conviction for conspiracy to distribute illegal substances, as opposed to some other form of contraband. We recognized that the evidence did support a circumstantial inference that a conspiracy existed, but found that was insufficient to support Cartwright's conviction because the evidence did not support an inference that he knew the object of the conspiracy was drug distribution as opposed to some other illegal goal. The jury was forced to speculate in order to fill in the gaps in the evidence. *Id*. at 288. Moreover, the government's evidence of a conversation and prior relationship between Cartwright and a co-conspirator did not change the result. We explained that, "in the absence of any evidence indicating the substance of [Cartwright's] conversation with [his co-conspirator], any evidence of a prior relationship with [the co-conspirator], or any other direct evidence indicating Cartwright's knowledge, the jury could only speculate as to Cartwright's knowledge." *Id*. at 289-90.

However, *Cartwright* does not assist Whitfield to the extent he claims. Here, there was direct testimony that Whitfield knew that Myrick and Plytas had been obtaining money by committing burglaries. The evidence supported a strong inference that Whitfield knew that his participation in the Monster Beverage burglary would contribute to a larger conspiracy that was providing a source of revenue to the group he willingly

5

joined.

Whitfield also contends (without citation to case law), that the nature of his relationship to the conspiracy, and to the conspirators, is evidence that he did not share the group's common objective. He argues, for example, that he did not share equally in the proceeds from the burglary, and that he was not present when the proceeds were divided. However, given his knowledge that the group was involved in other burglaries, that argument is not persuasive. "At a minimum . . . it must be shown that . . . a person has knowledge of the conspiracy's illicit purpose when he performs acts which further that illicit purpose." *United States v. Klein*, 515 F.2d 751, 753 (3d Cir. 1975).

Whitfield knew Plytas and Myrick were obtaining money by committing burglaries. His participation in the Monster Beverage burglary furthered the conspiracy's illicit purpose generally. "By acting in furtherance of the co-conspirators' goals with knowledge of the improper purpose, the jury can reasonably infer that the new member has achieved a tacit agreement with members of the ongoing conspiracy." *Id*.

Although evidence of Whitfield's participation in the larger burglary conspiracy was not nearly as strong as evidence of his participation in the single burglary of Monster Beverage, it did not have to be. It only had to be strong enough to establish his guilt in the larger conspiracy beyond a reasonable doubt. We think it was sufficient to establish his guilt to that level of certainty. [2]

---

[2] Based upon our decision in *United States v. Perez*, Myrick's testimony is

(continued...)

6

## III.

Whitfield also claims that he is entitled to a new trial based upon the newly discovered evidence of a co-conspirator's inconsistent statements to prison authorities. His claim is based upon the fact that Plytas testified at trial that he received heroin from another inmate, but he actually received the heroin from his father.

However, newly discovered evidence does not provide a remedy when it is merely cumulative or impeaching. *United States v. Adams*, 759 F.2d 1099, 1108 (3d Cir. 1985). Here, Plytas was extensively impeached with evidence of his prior bad acts throughout his testimony. The government brought out, on direct examination, the dozens of burglaries and robberies Plytas and his co-conspirators had committed in this case; his prior criminal record; his use of heroin in the Federal Detention Center; and the government's withdrawal of his plea agreement. All six defense counsel cross-examined him, some extensively, about his prior crimes and his prior inconsistent statements. We agree with the district court's ruling that Plytas's undisclosed inconsistent statement was cumulative impeachment material that did not affect Whitfield's defense.

## IV.

For the reasons explained above, we affirm appellant's conviction and the district court's order denying his motion for a new trial.

---

[2](...continued) sufficient because "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction." 280 F.3d 318, 344-45 (3d Cir. 2002) (emphasis added and citations omitted).