**UNITED STATES of America**

v.

**Markwann Lemel GORDON, Appellant**

**No. 00–2907.**

United States Court of Appeals, Third Circuit.

Argued April 5, 2002.

Filed May 10, 2002.

Isabel McGinty (Argued), Hightstown, NJ, for Appellant.

Patrick J. Meehan, United States Attorney, Laurie Magid, Deputy United States Attorney for Policy and Appeals, Robert A. Zauzmer, Assistant United States Attorney Senior Appellate Counsel, Ewald Zittlau (Argued), Assistant United States Attorney, for Appellee.

Before: SLOVITER, BARRY and ALARCON,\* Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Markwann Lemel Gordon appeals the judgment convicting and sentencing him for armed bank robbery, attempted armed bank robbery, conspiracy to commit armed bank robbery, and carrying and use of a firearm during a crime of violence. He raises four issues on appeal: (1) whether the District Court erred in its jury instructions on aiding and abetting; (2) whether the District Court erred by not questioning Gordon or his counsel on Gordon's decision not to testify; (3) whether the evidence was sufficient to support the convictions; and (4) whether the sentence violated the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We will affirm.

## I.

### BACKGROUND

Gordon was convicted for his participation in seven different bank robberies. The other participants were at various times Todd Brown, Gary Hutt, Darnell Jones, and George McLaughlin. The following is a summary of the underlying events, viewing the evidence in the light most favorable to the government, as the verdict winner:

*Counts 4–6*: On June 21, 1995, Gordon served as a lookout for the armed robbery of over a half of a million dollars from a PNC bank in Philadelphia by Hutt, Brown, and Jones. Gordon helped select the bank to rob and participated in planning the robbery. On the day of the robbery, Gordon drove a car around the area of the bank and was to stop anyone who chased the getaway car by hitting the pursuing vehicle with his car. Gordon was given approximately $9,000 to 10,000 of the yield.

---

\* Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

*Counts 7–9*: On October 30, 1997, Gordon confronted an employee of the Main Line Bank in Springfield with a gun outside of the bank and ordered her to open the doors of the bank and give him money. As he was entering the bank, another employee was able to lock Gordon out of the bank. Gordon's bag was found inside the bank, and contained money and a police scanner that contained a battery with Gordon's fingerprint. Gordon was able to get away in a car driven by McLaughlin, who was waiting as the getaway and switch car driver.

*Counts 10–12*: On October 21, 1996, Gordon was involved in an armed bank robbery of approximately $50,000. Gordon entered the Roxborough Federal Savings and Loan in Philadelphia with a gun, robbed the bank, left with McLaughlin in the getaway car, and switched to a car driven by Brown. Gordon, McLaughlin, and Brown divided the proceeds equally.

*Counts 13–15*: On March 4, 1997, Gordon was involved in the armed robbery of approximately $135,855 from the First Security Federal Savings Bank. Gordon confronted an employee in the bank parking lot with a gun, entered the bank, and successfully robbed the bank. Brown drove the getaway car and divided the money with Gordon.

*Counts 16–18*: On June 11, 1997, Gordon was involved in the armed robbery of approximately $58,500 from a PNC Bank in Philadelphia. According to the plan discussed in advance, Hutt robbed the bank, McLaughlin drove the getaway car, and Gordon drove the switch car. Hutt, McLaughlin, and Gordon divided the money three ways and gave $1500 to Brown for providing the stolen getaway and switch cars.

*Counts 19–21*: On July 18, 1997, Gordon was involved in an attempted armed bank robbery. McLaughlin was to enter and rob the Mellon–PSFS Bank in Philadelphia. Gordon was the getaway car driver, and Brown was the switch car driver. Gordon and Brown had told McLaughlin that it was his turn to enter the bank. Gordon and McLaughlin drove to the bank together where Gordon saw McLaughlin put a gun in his pants. McLaughlin was unsuccessful and left with Gordon, who switched to a car driven by Brown.

*Counts 22–24*: On August 28, 1997, Gordon and McLaughlin drove to a Corestates Bank in Philadelphia with the plan that Gordon rob the bank and McLaughlin drive the getaway car. Gordon confronted a bank employee in the parking lot with a gun and ordered an employee inside the bank to open the doors. The employee refused and the robbery was unsuccessful.

Gordon was found guilty on all counts and sentenced to a total of 1688 months imprisonment, three years supervised release, a $2100 special assessment, and restitution of $258,675. This is a direct appeal from that judgment.

## II.

## DISCUSSION

### A. Jury Instructions

Gordon argues that the District Court misstated the law in its jury instruction on aiding and abetting and that the misstatement is plain error requiring the grant of a new trial. The government concedes in its brief that part of the instruction "if read in isolation . . . may be incomplete," Government's Br. at 37, but argues that it was not error because the instructions read as a whole expressed the law correctly and that even if it was error, Gordon was not prejudiced.

■ Because Gordon did not object to the District Court's instructions as to aiding and abetting, our standard of review is

plain error. Fed.R.Crim.P. 52(b); *United States v. Wolfe*, 245 F.3d 257, 260–61 (3d Cir.2001). "A plain error is one that is clear or obvious." *Wolfe*, 245 F.3d at 261 (quotations omitted). The plain error standard is met where the error "affected substantial rights," which has been defined as "prejudicial in that it affected the outcome of the District Court proceedings." *Id.* We should exercise our discretion to correct the error "where the defendant is actually innocent, or where, regardless of the defendant's innocence or guilt, the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations omitted).

The District Court's charge to the jury on aiding and abetting, with the challenged language at the very end, reads in its entirety as follows:

Now, Counts Five, Six, Eight, Nine, Eleven, Twelve, Fourteen, Fifteen, Seventeen, Eighteen, Twenty, Twenty–One, Twenty–Three, and Twenty–Four also charge defendant Markwann Lemel Gordon with aiding and abetting.

A person may violate the law even though he or she does not personally do each and every act constituting the offense if that person "aided and abetted" the commission of that offense. The aiding and abetting statute, 18 United States Code Section 2, provides that, and I quote:

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Under the aiding and abetting statute, it is not necessary for the Government to show that the defendant himself committed the crime with which he is charged in order for you to find him guilty.

A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find the defendant guilty of the offense charged if you find beyond a reasonable doubt that the Government has proved that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the first requirement is that you find that another person has committed the crime charged. Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that crime was committed, then you must consider whether the defendant aided or abetted the commission of the crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant willfully and knowingly associate himself in some way with the crime, and that he willfully and knowingly seek by some act to help make the crime succeed.

Participation in a crime is willful if action is taken voluntarily and intentionally, or, in the case of a failure to act, with a specific intent to fail to do something the law requires to be done. That is to say, with a bad purpose either to disobey or disregard the law.

The mere presence of the defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere acquiescence by the defendant

544

in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. An aider and abettor must have some interest in the criminal venture.

Now, to determine whether Markwann Lemel Gordon aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he associate himself with the criminal venture knowingly and willfully?

Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor, and therefore, is guilty of the offense.

If, on the other hand, your answers to this series of questions are all "No," then the defendant is not an aider and abettor, and you must find him Not Guilty.

App. at 467–70.

■ Gordon challenges two aspects of the jury charge: (1) the use of the word "venture," and (2) the statement of the law in the concluding paragraphs. Our analysis must focus initially on the specific language challenged, but must consider that language as part of a whole. *Francis v. Franklin*, 471 U.S. 307, 315, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Smith v. Horn*, 120 F.3d 400, 411 (3d Cir.1997). The proper inquiry is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

■ Looking first at the use of the word "venture" in the aiding and abetting instructions, Gordon argues that the District Court erred in using the phrase "criminal venture" without defining it because "venture" could be misconstrued or mistakenly substituted for "attempt" or "conspiracy" in a multi-count indictment such as this one.

We conclude it was not error for the District Court to use the word "venture" in its instructions. The jury instructions clearly set out the different crimes with which Gordon was charged and the need to prove each separate offense. The District Court instructed the jury to apply the aiding and abetting inquiry to each separate offense. As Gordon acknowledged, the use of the word "venture" is widespread and likely derives from a 1938 decision by Judge Learned Hand, *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir.1938). The language has been used in the aiding and abetting context since then without any suggestion by a court that it is ambiguous or confusing. *See, e.g., United States v. Powell*, 113 F.3d 464, 467 (3d Cir.1997); *United States v. Jenkins*, 90 F.3d 814, 821 (3d Cir.1996); *United States v. Bey*, 736 F.2d 891, 895 (3d Cir.1984).

■ The more troubling allegation by Gordon is that of the explanation at the conclusion of the aiding and abetting instruction. The District Court set out three questions that the jurors needed to ask in order to find Gordon guilty of aiding and abetting. Under the law, if the jury answered in the negative to any one of those three questions, it would need to find Gordon not guilty of aiding and abetting. However the instructions state that the jury would need to answer in the negative to all three questions to find Gordon not guilty, implying that if the jury answered yes to just one or two of the three questions, Gordon could be found guilty.

Therefore, Gordon argues he could have been convicted even if the government had not proven every element of the crime.

■■■ The government responds that there was no error because the misstatement did not detract from the District Court's clear and correct explanation right before the misstatement. However, "while a single defect does not necessarily make an instruction erroneous, a defect in a charge may result in legal error if the rest of the instruction contains language that merely contradicts and does not explain the defective language in the instruction." *Whitney v. Horn*, 280 F.3d 240, 256 (3d Cir.2002) (citation omitted). In *Whitney*, we found a jury charge erroneous where it misstated the law despite having stated the law correctly just before the misstatement. Id. "[O]ther language in the instruction does not always serve to cure the error. This is so even when other language correctly explains the law." *Id.* (citing *Francis*, 471 U.S. at 322, 105 S.Ct. 1965).

Although the final statement of the instruction was incomplete and therefore incorrect,[1] we still need to determine if the error affected the defendant's substantial rights in order to conclude that it was "plain error." The government argues that, assuming arguendo there was error, the instruction was irrelevant to the dispositive issue before the jury because at trial the defense only claimed that Gordon was not involved in the bank robberies, not that "whoever took the steps alleged to have been taken during the robberies by Gordon … had not aided and abetted the offenses within the meaning of that term. The only question was whether Gordon was the person." Government's Br. at 38–39. For this reason, the government argues that the lack of specificity in the instruction had no impact on the verdict. We agree. Gordon does not challenge this interpretation of his defense and has not explained how, in light of his defense that he was not involved in the attempts at all, the jury's verdict could be interpreted to conclude that it found less than all three elements.

■ We are not required to correct an error unless we conclude the error prejudiced the outcome, the defendant is actually innocent, or the error seriously affected the fairness, integrity, or public reputation of the judicial system. *See United States v. Olano*, 507 U.S. 725, 735–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We have cautioned that it is a " 'rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *Wolfe*, 245 F.3d at 264 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)). Although the instruction given by the District Court misstated the scenarios under which a not guilty verdict should be found, we need not exercise our discretion to correct this error because it did not prejudice the outcome nor did the error seriously affect the fairness, integrity, or public reputation of the judicial system.[2]

---

1. The District Judge took that portion of his charge verbatim from Leonard B. Sand, *Modern Federal Jury Instructions* ¶ 11.01, at 11–4 (2001), a respected and widely used text. As we explain in the text, we believe that Judge Sand's text should be modified so that the sentence "If, on the other hand, your answers to this series of questions are 'no,' then the defendant is not an aider and abettor, and you must find him not guilty" should read "If, on the other hand, any one of your answers to these three questions is 'no,' then the defendant is not an aider and abettor, and you must find him not guilty."

2. Defendant filed a Petition for Panel Rehearing in which he argues, *inter alia*, that the panel opinion fails to reach the additional

## B. Right to Testify

■ Gordon argues that the District Court erred when it failed to take corrective action to ensure that he had knowingly relinquished his right to testify. We review de novo "claims of constitutional violations, such as the denial of the right to testify." *United States v. Leggett*, 162 F.3d 237, 245 (3d Cir.1998).

It is clear precedent in this circuit that a district court "has no duty to explain to the defendant that he or she has a right to testify or to verify that the defendant who is not testifying has waived the right voluntarily." *Id.* at 246 (quoting *United States v. Pennycooke*, 65 F.3d 9, 11 (3d Cir.1995)). In *Leggett*, we stated that a district court not only has no duty to make an inquiry, but in fact "as a general rule, *should not* inquire as to the defendant's waiver of the right to testify," because the decision to testify or not is a part of trial strategy into which a judge should not intrude. *Id.* at 246.

Gordon argues that this case falls into an exception to *Leggett* since the defense counsel gave the District Court an indication that he had not properly counseled his client on this issue or secured his informed waiver. Gordon points to the following discussion that occurred at sidebar (Mr. Bello is defense counsel, Mr. Zittlau is the prosecutor):

    Mr. Bello: Judge, I mean I usually do this, and perhaps you should colloquy the defendant as to his desire to testify or not testify.

    The Court: Well, we don't generally colloquy on that point. I don't want to seem in any way coercing.

    Mr. Zittlau: Yeah. There's a Third Circuit decision on that.

    The Court: That says you can't do that.

    Mr. Zittlau: It's a practice that you shouldn't do it.

    Mr. Bello: I just don't want it to come back later. All right.

    The Court: I have to assume, when he doesn't take the Witness Stand, that's his choice.

    Mr. Bello: O.K.

    The Court: Because it seems to me, if you ask any questions, it's inherently coercive.

    Mr. Bello: O.K.

    The Court: Coming from me.

    Mr. Zittlau: Yes, your Honor.

    The Court: I think that's the gist of what the Third Circuit said.

    Mr. Bello: That's what I said. I'm unfamiliar with the case.

    The Court: O.K. Anything else?

App. at 422–23.

Defense counsel's request that the court "colloquy the defendant" does not lead to the conclusion that defense counsel made a unilateral decision that Gordon was not going to testify. Gordon never raised any objection at trial indicating his interest in testifying or that his right to testify was not explained.

■ Gordon agrees that the District Court need not have colloquized him but asserts that the District Court was obligated to ask counsel if he had secured the informed consent of his client and if not, instruct that he should do so before court reconvened. However, the decisions in *Leggett* and *Pennycooke* counsel against

issue referred to in *Olano* of whether the error seriously affected the fairness, integrity, or public reputation of the judicial system. The panel believes that its view that the error did not have that effect was implicit. However, because the panel has decided to turn the decision into a precedential one, it has made its view in that respect explicit. Defendant will have the opportunity to file a petition for rehearing before the full court.

such an obligation. *Leggett* and *Pennycooke* outlined very " 'exceptional, narrowly defined circumstances' " in which judicial intervention might be appropriate, for example when " 'defense counsel nullifies a defendant's right to testify over the defendant's request' " or threatens to withdraw as counsel. *Leggett*, 162 F.3d at 247 (quoting *Pennycooke*, 65 F.3d at 12, 13). There is no comparable evidence in this case.

## C. Sufficiency of the Evidence

■ Gordon argues that there was insufficient evidence to find him guilty of aiding and abetting the armed bank robberies and related firearm offenses of June 21, 1995 (counts 5 and 6), June 11, 1997 (counts 17 and 18), and July 18, 1997 (counts 20 and 21). Gordon argues that the evidence only proved that he was the driver of a car and not that he knew a firearm was to be used in any of those robberies. Because Gordon did not file a motion for acquittal pursuant to Fed. R.Crim.P. 29(c), we review this claim under a plain error standard. *See United States v. Gaydos*, 108 F.3d 505, 509 (3d Cir.1997). "A conviction based on insufficient evidence is plain error only if the verdict constitutes [']a fundamental miscarriage of justice.' " *United States v. Thayer*, 201 F.3d 214, 219 (3d Cir.1999) (quoting *United States v. Barel*, 939 F.2d 26, 37 (3d Cir.1991)).

■ To establish liability for a crime based on an aiding and abetting theory, the government must prove that the underlying crime occurred and that the defendant "knew of the crime and attempted to facilitate it." *United States v. Garth*, 188 F.3d 99, 113 (3d Cir.1999). The government must also prove that the defendant had the "specific intent of facilitating the crime . . . mere knowledge of the underlying offense is not sufficient for conviction." *Id.* (citation omitted). Although

mere knowledge is not enough to convict, we have held that a defendant can be convicted of aiding and abetting a violation of § 924(c)(1) without ever possessing or controlling a weapon if the defendant's actions were sufficiently "intertwined with, and his criminal objectives furthered by" the actions of the participant who did carry and use the firearm. *Id.* (citing *United States v. Price*, 76 F.3d 526, 529–30 (3d Cir.1996)). In *Price*, the defendant robbed a bank with another individual but never handled the gun. This court upheld the guilty verdict because "a reasonable jury could infer that Price had prior knowledge that Stubbs was planning to use and carry the gun during the robbery, and that both Stubbs' and Price's roles in the crime were facilitated by the fact that Stubbs brandished a gun while Price scooped up the money." *Id.* "The actions of each furthered the actions of the other, and the robbery succeeded because of the combined actions of both." *Id.* at 113–14.

■ The evidence in the instant case is sufficient to come to the same conclusion. Although Gordon was not in the bank for any of the robberies listed in the counts he challenges on this ground, the evidence presented to the jury was sufficient as a whole to show a pattern to the bank robberies that makes clear that Gordon not only knew that a gun would be used but that he attempted to facilitate the carrying of a gun, wished to bring about or make the crime succeed, and that the gun was instrumental to his decision to participate.

Each of the seven charged robberies involved a combination of the same group of people who took turns filling in the roles necessary for the robbery. Gordon himself went into the bank and brandished a weapon on four of those occasions. In addition, there was specific evidence that the use of firearms was discussed during the planning stage of the crimes and that

548

Gordon was in a position to observe the actual use of a firearm in at least several of the robberies. No miscarriage of justice occurred in convicting Gordon for these counts under an aiding and abetting theory, and therefore there was no plain error.

### D. *Apprendi*

Gordon claims that because the government failed to prove each element of 18 U.S.C. § 924(c)(1), his sentence violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). However, Gordon has not shown how any fact increased the statutory maximum or was not proven beyond a reasonable doubt, and thus Apprendi does not apply. *See id.* at 490, 120 S.Ct. 2348.

### III.

### CONCLUSION

For the reasons set forth above, we will affirm the judgment of conviction and sentence of the District Court.