

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2007

# USA v. Garcia

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1760

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Garcia" (2007). *2007 Decisions.* Paper 740.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/740

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 06-1760

———

UNITED STATES OF AMERICA

v.

WILSON A. GARCIA,
                    Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00662-2)
District Judge: Honorable Harvey Bartle, III

———

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2007

Before: SLOVITER, HARDIMAN, and ROTH, Circuit Judges

(Filed:  July 18, 2007)

———

OPINION

———

SLOVITER, <u>Circuit Judge</u>.

Appellant Wilson A. Garcia was convicted following a jury trial of two counts of cocaine distribution in violation of 21 U.S.C. §§ 841(a)(1), 860(a). Garcia challenges the sufficiency of the evidence to support his conviction at trial. We will affirm.

**I.**

As we write primarily for the parties, who are already familiar with the facts of this case, we will not restate those facts except as necessary for our analysis. Undercover Philadelphia Police Officer Roberto Fontan testified at trial that he received a phone call from a confidential informant at approximately 5:00 p.m. on the afternoon of April 21, 2004. The informant, who had advised Fontan a day earlier that "two guys from Reading, Pennsylvania might be coming down" to sell cocaine, App. at 111, told Fontan during this call that the two males were inside a location at 4430 N. 3rd Street, Philadelphia, and were prepared to sell him a kilo of cocaine. The informant had arranged that the price for the kilo would be $23,000.

Provisioned with prerecorded "buy money," Fontan went to the 4430 N. 3rd Street address at approximately 6:00 p.m. and knocked on the door. A man later identified as co-defendant Fernando Garcia, who was Wilson Garcia's brother, admitted Fontan to the residence. Upon entering the house, Fontan saw Wilson Garcia, along with the informant and a male friend of the informant; he had never met any of the men at the house before, aside from the informant. A teenaged woman was also briefly present, but she went upstairs soon after Fontan arrived.

2

Wilson Garcia directed Fontan to sit on the couch. Fontan testified that he engaged in "a conversation in reference to buying the kilo of cocaine," conducted in Spanish. App. at 76. Fontan and Fernando Garcia apparently engaged in the bulk of the conversation inside the house as Wilson Garcia stood nearby and listened without saying anything. At some point during the meeting, however, Wilson Garcia looked in the direction of his brother, Fernando, and stated, "[L]et's get this over with." App. at 78.

Upon this statement, Fernando Garcia exited the house and Fontan waited in the living room with Wilson Garcia, the informant, and the informant's friend for approximately five minutes. Wilson Garcia then looked out the front window of the residence, told Fontan to go outside to a red minivan parked across the street from the address, and opened the door to let Fontan go.

Fontan entered the van and sat in the second row of seats. Fernando Garcia, who was sitting in the driver's seat, told Fontan that the kilo of cocaine was in the third row of seats. Fontan retrieved the package of cocaine, accepting a razor blade from Fernando Garcia to cut it open. Fontan inspected the cocaine, saying he was satisfied. He then handed over $11,000 to Fernando Garcia, told him he needed to retrieve an additional $12,000 from his vehicle, and exited the van.

While at his vehicle retrieving the additional funds, Fontan notified his supervisor by phone that he had seen the cocaine. As he began walking back from his vehicle to the van to give Fernando Garcia the additional funds, Fontan observed Wilson Garcia leave 4430 N. 3rd Street and begin walking toward Wingohocking Street a half-block away.

3

Fontan returned to the van and gave the $12,000 to Fernando Garcia, who was in the process of placing the initial $11,000 in the van's glove compartment as Fontan arrived. Upon noticing that a back-up officer had pulled up near the van as he counted the second set of funds, Fernando Garcia cursed and fled, taking the keys and the additional $12,000 with him. He was chased and later arrested by an officer.

After Fernando Garcia ran from the van, Fontan exited the van as well, taking the kilo of cocaine with him. From his vehicle, Fontan saw Wilson Garcia, who was looking in the direction of uniformed police personnel, run towards and enter the passenger side of a parked car at 300 West Wingohocking Street and drive off. The car was later stopped by police and Wilson Garcia was arrested. Wilson Garcia had in his possession a Pennsylvania driver's license with a Reading address at the time he was searched. Paperwork found in the red van used in the transaction also demonstrated that it was registered to and owned by Wilson Garcia.

A grand jury in the Eastern District of Pennsylvania returned an indictment of Wilson and Fernando Garcia, charging them each with three counts stemming from the events of April 21, 2004. Count One charged conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B). Count Two of the indictment charged distribution, and aiding and abetting the distribution, of 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. Count Three charged distribution, and aiding and abetting the distribution, of 500 grams or more of cocaine near a school in violation of 21 U.S.C. §§ 860(a), 841(a)(1),

4

841(b)(1)(B) and 18 U.S.C. § 2.

Following presentation of the government's case-in-chief at trial, Wilson Garcia moved for acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing that the evidence was insufficient to sustain a conviction on any of the three counts. The District Court denied this motion. The jury found Wilson Garcia and Fernando Garcia guilty of Counts Two and Three on May 10, 2005. They were each found not guilty of the conspiracy count. Wilson Garcia renewed his Rule 29 motion after the verdict, which the District Court also denied. He was sentenced to 120 months of imprisonment followed by a term of supervised release of eight years. Garcia filed a timely appeal.

## II.

The District Court had subject matter jurisdiction over this case under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. "A Rule 29 motion for judgment of acquittal obliges a district court to review the record in the light more favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence. This Court reviews grants or denials of Rule 29 motions de novo and independently applies the same standard as the District Court." United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006) (internal citations and quotation marks omitted). "The standard of review is 'particularly deferential' when deciding whether a jury verdict is based on legally sufficient evidence[,]" and the "appellant carries a very heavy burden on appeal." United States v. Cothran, 286 F.3d 173, 175 (3d Cir. 2002) (internal citation omitted).

5

**III.**

Garcia challenges the sufficiency of the evidence presented at trial to support his convictions under the distribution charges. The elements of a base offense under 21 U.S.C. § 841(a)(1) are "(1) knowing or intentional (2) possession (3) with intent to distribute (4) a controlled substance[,]" United States v. Lacy, 446 F.3d 448, 454 (3d Cir. 2006), and under 18 U.S.C. § 2, one who aids and abets such distribution is liable as a principal.[1] Garcia asserts that there was a lack of evidence at trial that he played any role

_____

[1]The statute provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal" and that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § (2)(a),(b). 18 U.S.C. § 2 has abolished the common-law distinction between principals and accessories and makes them all principals. See, e.g., Gonzales v. Duenas-Alvarez, 127 S. Ct. 815, 820 (2007) ("[E]very jurisdiction – all States and the Federal Government – has expressly abrogated the distinction among principals and aiders and abettors . . . .") (internal citation and quotation marks omitted); United States v. Hodge, 211 F.3d 74, 77 (3d Cir. 2000) (observing that the federal aiding and abetting statute indicates that "an aider and abettor should be treated like any other principal"); United States v. Pungitore, 910 F.2d 1084, 1132 (3d Cir. 1990) (noting that "[f]ederal courts have long recognized that a defendant indicted as a principal may be convicted upon proof that he aided and abetted the charged offense"); see also United States v. Oates, 560 F.2d 45, 55 (2d Cir. 1977) (noting that "one who aids and abets the commission of a crime is not only *punishable* as a principal but *is* a principal" and explaining that the current phrase in the statute, 'is punishable as a principal,' presents no evidence of "any Congressional intent to change the substantive law that an aider and abettor *is a principal*") (internal citations and quotation marks omitted).

6

in the distribution of the cocaine, arguing that he was merely present during his brother's discussion of the sale with Fontan.

Viewing the evidence in the light most favorable to the government, as we must, we disagree. In order to "establish liability for a crime based on an aiding and abetting theory, the government must prove that the underlying crime occurred and that the defendant knew of the crime and attempted to facilitate it[,]" with the "specific intent of facilitating the crime[, as] mere knowledge of the underlying offense is not sufficient for conviction." United States v. Gordon, 290 F.3d 539, 547 (3d Cir. 2002) (internal citations and quotation marks omitted). We require "proof that the defendant is in some way associated with the substantive offense – that he participated in it as in something that he wished to bring about, that he sought by his action to make it succeed." United States v. Garth, 188 F.3d 99, 113 (3d Cir. 1999) (internal citation and quotation marks omitted).

Garcia's argument ignores the substantial evidence of his participation in the crime, and of his specific awareness that the object of Fontan's visit was the cocaine purchase. Officer Fontan testified that, during the conversation inside the house, he was "talking about the kilo of cocaine" and "talking towards Wilson Garcia and Fernando Garcia[.]" App. at 146. While apparently Fernando Garcia "was the one who talked" for the most part with Fontan during this conversation, Wilson Garcia did state, "Let's get this over with," "[a]t which time," according to Fontan's testimony, Fernando Garcia then exited the property. App. at 146, 78. Wilson Garcia thereafter directed Fontan across the street to the van that he owned where the cocaine was to be found and where the

7

transaction was consummated with Fernando Garcia. This kind of substantial evidence adequately supports the jury's verdict. See United States v. Frorup, 963 F.2d 41, 43-44 (3d Cir. 1992) (upholding conviction for possession on aiding and abetting theory, where defendant arranged for an agent's purchase by telling him from whom to buy, brought the agent to a particular location, and assisted in the cash-for-cocaine exchange). Fontan's testimony makes clear that the precise object of the purchase – the kilo of cocaine – was specifically discussed during the meeting with the two brothers, and the kilo itself was found inside Wilson Garcia's vehicle, to which he directed Fontan.

Finally, we also reject the argument that Garcia's acquittal on the conspiracy charge necessarily means the jury concluded Garcia did not participate in the transaction with his brother and Fontan. The decision in United States v. Powell, 469 U.S. 57 (1984), stands for the proposition that a defendant is not entitled to have a conviction on one count set aside because it is inconsistent with an acquittal on another count. Id. at 67-68 (noting that a "criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts" which is independent from "the jury's determination that evidence on another count was insufficient"); see also United States v. Schwartz, 548 F.2d 427, 430-31 (2d Cir. 1977) (conviction on grounds of aiding and abetting extortion would not be reversed where conviction was based on adequate evidence, despite the fact that the jury had acquitted defendant of conspiracy).

**IV.**

For the above-stated reasons, we will affirm the judgment of conviction and sentence.

_____