NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4481
_____

UNITED STATES OF AMERICA

v.

MALIK SNELL,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 08-cr-00299-001)
District Judge:  Hon. R. Barclay Surrick
_____

Submitted Under Third Circuit LAR 34.1(a)
June 22, 2011

Before:  CHAGARES, JORDAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: June 23, 2011 )
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Appellant Malik Snell ("Snell"), a former officer in the Philadelphia Police

Department, appeals his conviction in the United States District Court for the Eastern

District of Pennsylvania for violations of 18 U.S.C. §§ 1951 and 924(c) stemming from his commission of two robberies.  Snell also appeals the sentence of 360 months' imprisonment imposed on him by the District Court.  For the following reasons, we will affirm.

## I.      Background

The first robbery at issue occurred on December 14, 2007.  Around noon that day, Ricardo McKendrick, Jr., was driving in south Philadelphia and had with him a diaper bag containing $40,000 in illegal drug proceeds.  As McKendrick made a turn, he heard a horn and noticed that a black car behind him had activated police-style lights.  Believing he was being pulled over for a moving violation by a police officer in an unmarked car, McKendrick stopped his minivan on the side of the street.

Snell, who was at the time a Philadelphia police officer, emerged from the black car wearing his full police uniform, which included a holstered gun.  He approached McKendrick's car, opened the door, pulled McKendrick out, and then handcuffed him and patted him down.  During the pat down, Snell took $130 out of McKendrick's pocket and put it into his own.  Snell also told McKendrick that federal agents had told him to stop McKendrick, and he asked whether McKendrick had any weapons or drugs in his car.  McKendrick insisted that he had neither, but Snell proceeded to search McKendrick's car while continuing to ask McKendrick about weapons and drugs.

2

After that initial search, Snell placed McKendrick in the backseat of Snell's car without closing the door. Snell then returned to McKendrick's car and resumed the search. He soon emerged with the diaper bag and placed it in the trunk of his car.

Moments later, McKendrick overheard Snell on his cell phone relating these or similar words: "Yeah, I got it right here. We – I got him right here. Hurry up." (Supp. App. at 24.) Hearing that, and noting Snell's apparent disregard for police protocol, McKendrick began to fear for his safety and tried to flee. Snell blocked him and forced him back into the backseat. In forcibly detaining McKendrick, Snell used his right hand to push McKendrick while keeping his left hand on his waist near his holstered gun.

After forcing McKendrick back into the backseat, Snell again searched McKendrick's car. He then abruptly stopped searching, returned to his car, removed McKendrick from the backseat, and drove off at high speed.[1]

The second robbery for which Snell was convicted occurred two days later on December 16, 2007. Late that evening, Snell, his brother-in-law Tyree Aimes, and Stephen Gibson drove in Snell's Dodge Durango to an apartment in Pottstown, Pennsylvania, where they had heard that approximately $10,000 in illegal drug proceeds was stored. Snell had his personal firearm with him.

---

[1] About an hour later, after a phone call from a bystander, the police arrived and released McKendrick from the handcuffs. McKendrick then reported his encounter with Snell and his having been robbed of $130, but he did not at that time report the $40,000 being stolen, for fear of alerting the police to his drug dealing.

3

When the three men arrived at the Pottstown apartment, they saw two police cars parked at the apartment building. After driving past the building twice, Snell and his two accomplices proceeded to a nearby convenience store where they planned to wait until the police had left the vicinity. A few minutes later, they returned to the apartment and found that the police cars were gone. Aimes and Gibson then began searching for a back window through which they could enter the apartment that they believed contained the money. They were unsuccessful and returned to the Durango to inform Snell of that fact. In response, Snell told them to knock on the front door and, once it was opened, to enter the apartment and tie up the occupants.

Aimes and Gibson returned to the front door and knocked twice. After the second knock, a male occupant opened the door, and Aimes immediately began fighting with him, while Gibson entered the apartment. Gibson found and tied up a female occupant, rummaged through her closet, and then left. Aimes and the male occupant eventually stopped fighting, and Aimes ran back to the Durango.

Snell and Aimes circled the block in the Durango three times looking for Gibson but sped away when the police arrived. The police pursued them at high speed for several minutes until the Durango crashed into a smaller vehicle and careened to a stop at the side of an intersection. From there, Snell and Aimes fled on foot. Snell was apprehended a short while later after a K-9 officer and his dog tracked him to a small shed at a nearby residence.

4

After being taken into custody and advised of his *Miranda* rights, Snell told the Pottstown police officers that he was a Philadelphia police officer and had been carjacked and kidnapped. Once at the police station, Snell provided a detailed written statement to that effect. However, roughly two hours later, after seeing Aimes being escorted through the station by police, Snell retracted his statement and gave a new one. In his new statement, Snell recounted the evening's events basically as described here, but he asserted that he had simply driven Aimes to Pottstown by request and was ignorant of the intended robbery.

In May 2008, based on the Pottstown robbery, a grand jury indicted Snell, along with Aimes and Gibson, on one count of conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951 ("Count One"); one count of attempted interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951 ("Count Two"); one count of carrying a firearm during or in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) ("Count Three"); and aiding and abetting, in violation of 18 U.S.C. § 2. Aimes and Gibson pled guilty to those charges, while Snell proceeded to trial.

Snell's first trial, in October 2008, ended in a mistrial after the jury failed to reach a verdict on any of the counts. A grand jury subsequently indicted Snell again on Counts One, Two, and Three and added new counts for violations of 18 U.S.C. § 1951 ("Count Four") and 18 U.S.C. § 924(c) ("Count Five") stemming from the McKendrick robbery. The grand jury also added one count of witness retaliation, in violation of 18 U.S.C.

5

§ 1513 ("Count Six").[2] Snell's second trial, in March 2009, resulted in an acquittal on Counts Five and Six and a mistrial on the remaining counts.

In June 2009, Snell was tried again on Counts One through Four. During trial, the jury heard evidence of the McKendrick and Pottstown robberies as described above. At closing, in response to Snell's contention that he had no knowledge of Aimes's intent to commit the Pottstown robbery, the government argued:

> If you find that – that Malik Snell is guilty of Count Four[, i.e., the McKendrick robbery], I submit to you that's very strong evidence that Malik Snell had the – had the knowledge and intent … to steal[] drug proceeds [in the Pottstown robbery].

(App. 2 at 115.) Snell did not object. Ultimately, the jury returned a guilty verdict on all Counts. Snell did not move for a judgment of acquittal based on the sufficiency of the evidence or for a new trial.

In November 2009, at sentencing, the District Court adopted the Probation Office's calculation of a total adjusted offense level of 34, which, with Snell falling within criminal history category I, resulted in an advisory Guidelines range for the robbery offenses of 151 to 188 months. Snell was also subject to a mandatory consecutive sentence of 60 months for the § 924(c) firearm offense. Combined, the effective Guidelines range was 211 to 248 months.

Snell objected to the Guidelines calculation, arguing that it included a one-level enhancement based on McKendrick's claimed loss of $40,000, which, despite the guilty

---

[2] The basis for Count Six was not discussed in the parties' submissions.

6

verdict, had not been proven.  The District Court overruled that objection, explaining that the $40,000 loss need only be shown by a preponderance of the evidence and that McKendrick's unrebutted testimony on that point was sufficient.

The Court then proceeded to grant certain of the government's motions for adjustments to the Guidelines calculations, including a change from criminal history category I to category II, pursuant to U.S.S.G. § 4A1.3, to account for an under-representative criminal history score,[3] a two-level upward departure for institutional damage to the Philadelphia Police Department in connection with Snell's wearing his police uniform during the McKendrick robbery, and a two-level upward departure for endangering public safety in connection with his flight from the Pottstown robbery.  After the adjustments, Snell's total offense level was 36 and his criminal history category was II, which, in turn, when combined with the 60 months to be served consecutively for the § 924(c) conviction, resulted in a Guidelines range of  270-322 months.

Finally, the District Court granted the government's motion for an upward variance and, after reviewing the § 3553(a) factors, imposed a sentence of 360 months. In explaining its sentence, the Court noted Snell's Marine Corps service and past commendable police service but noted also that Snell had failed to acknowledge his criminal actions, had perjured himself repeatedly, had damaged the reputation of the

---

[3] At Snell's second and third trials, the government introduced evidence under Federal Rule of Evidence 404(b) regarding three other uncharged robberies of drug dealers that Snell either committed or planned.

7

Philadelphia Police Department, and had otherwise failed to acknowledge "the people that [he'd] hurt."[4]  (Supp. App. at 374.)

Snell timely appealed.

## II.    Standard of Review[5]

Snell raises several issues on appeal, some pertaining to the conduct of the trial and the sufficiency of the evidence to sustain the verdict, others pertaining to sentencing. More specifically, Snell argues that there was insufficient evidence to support his conviction for the McKendrick robbery and that he deserves a new trial on the McKendrick robbery charge because the verdict was against the weight of the evidence. He also seeks a new trial on all charges because of the alleged taint caused by the government's statement at closing argument regarding the relationship between his commission of the McKendrick robbery and the Pottstown robbery.  Regarding sentencing, Snell argues that the District Court erred in finding that McKendrick had been robbed of $40,000.  He further asserts that 360 months' imprisonment is a substantively unreasonable sentence.

We review for plain error a claim for judgment of acquittal based on evidentiary challenges raised for the first time on appeal.  *United States v. Gordon*, 290 F.3d 539,

---

[4] One of the passengers of the vehicle into which Snell crashed at the end of his high-speed flight suffered several serious injuries and was left with a permanent limp. We infer that the District Court was referring, at least in part, to that passenger.

[5] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

547 (3d Cir. 2002). We look for abuse of discretion when reviewing a denial of a motion for a new trial. *United States v. Kelly*, 539 F.3d 172, 181 (3d Cir. 2008). As to the District Court's sentencing decision, we review for clear error the Court's factual conclusions, *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007), and we review the sentence itself for substantive reasonableness, using an abuse-of-discretion standard. *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008).

## III. Discussion

### A. Sufficiency of the Evidence of the McKendrick Robbery

"A conviction based on insufficient evidence is plain error only if the verdict constitutes a fundamental miscarriage of justice." *United States v. Thayer*, 201 F.3d 214, 219 (3d Cir. 1999) (internal quotation marks omitted). Put another way, a conviction is only plainly erroneous if the evidence supporting guilt is so clearly insufficient that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." *United States v. Castro*, 776 F.2d 1118, 1129 (3d Cir. 1985) (internal quotation marks omitted).

Here, Snell argues that the evidence does not show that he threatened or used force to steal money from McKendrick, as required by 18 U.S.C. § 1951(b)(1).[6] Rather, Snell contends, McKendrick was complying with the commands of an apparent authority figure

---

[6] "Robbery" is defined, in pertinent part, as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, *by means of actual or threatened force*, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1) (emphasis added).

9

and so was not dispossessed of his money by force as contemplated by the statute. Among other things, however, Snell ignores the evidence of him handcuffing and forcibly detaining McKendrick. That evidence alone demonstrates Snell's use of force in obtaining the money and so supports the conviction on Count Four. Thus, the District Court did not plainly err in allowing that conviction to stand.[7]

### B.     *Appropriateness of a New Trial*

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a district court may grant a new trial "'[o]n a defendant's motion.'" *United States v. Wright*, 363 F.3d 237, 248 (3d Cir. 2004) (quoting FED. R. CRIM. P. 33). As a general matter, when a defendant fails to move for a new trial, the district court has no motion upon which to exercise its discretion, and we are left without an exercise of discretion to review. *See id.* (noting that "we need not reach the merits of [appellant's] argument … [for] a new trial" because he failed to move for a new trial pursuant to Rule 33). That said, a trial court exercises discretion and is thus subject to review when it *sua sponte* orders a new trial or treats a motion for judgment of acquittal as a motion for a new trial. *Id.* at 248 n.4.

---

[7] Based on the flawed premise that the McKendrick robbery conviction was not supported by sufficient evidence, Snell also strangely argues that his conviction on Count Three for possessing a firearm in connection with the Pottstown robbery was likewise based on insufficient evidence. Snell appears to confuse the firearm possession charge in Count Three with the firearm possession charge in Count Five, which related to the McKendrick robbery and resulted in an acquittal. Since it obviously does not follow that a lack of force in the McKendrick robbery equates to not having possessed a firearm in connection with the Pottstown robbery, we reject his argument.

Here, Snell did not move for a new trial. Nor did he make a motion for judgment of acquittal that the District Court then treated as a motion for a new trial. Nor did the District Court *sua sponte* order a new trial. In short, the District Court had no occasion to exercise discretion with respect to the grant or denial of a new trial. Accordingly, there is nothing for us to review in that regard, and Snell's claim that he should have been awarded a new trial fails.

C.    *The $40,000 Loss Calculation*

Facts pertaining to Guidelines calculations need only be found by a preponderance of the evidence. *Grier*, 475 F.3d at 568. Here, there was unrebutted testimony that the diaper bag that Snell took from McKendrick contained $40,000. It was not clear error, then, for the District Court to find by a preponderance of the evidence that the amount of loss in connection with the McKendrick robbery was $40,000. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (noting that it "can virtually never be clear error" for a court to base a finding on credible, coherent, facially plausible, uncontradicted, internally consistent testimony).

D.    *Substantive Reasonableness of Snell's Sentence*

A sentence is substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009). On the record here, there is simply no basis for concluding that the sentence imposed by the

11

District Court was beyond what another sentencing court may have imposed.

Accordingly, we find no error.

## IV.    Conclusion

For the foregoing reasons, we will affirm the judgment of conviction and the sentence.