NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3691
_____

UNITED STATES OF AMERICA

v.

KENNETH MORELAND,
                              Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 11-cr-00618-001)
District Judge:  Honorable Legrome D. Davis
_____

Submitted Under Third Circuit LAR 34.1(a)
June 10, 2014
_____

Before: AMBRO, GREENBERG and BARRY, Circuit Judges

(Opinion Filed: July 18, 2014)
_____

OPINION
_____

BARRY, Circuit Judge

Kenneth Moreland was convicted of aiding and abetting, attempt, and conspiracy

to commit robbery under the Hobbs Act, and of using and carrying and aiding and

abetting the use and carry of a firearm while committing a crime of violence, all in

connection with his role in a home invasion against his former employer. He was sentenced to 300 months in prison, and ordered to pay a fine and restitution.

On appeal, Moreland claims that the government presented insufficient evidence of the firearms offense and of the element of the Hobbs Act which requires that "commerce or the movement of any article or commodity in commerce" be affected. 18 U.S.C. § 1951(a). He also claims that the District Court erred in admitting evidence that he previously stole a safe from the employer's residence.

We will affirm.[1]

## I.

We write primarily for the parties and thus only briefly set forth the relevant facts. Ernest Manna ("Manna"), a used car dealer, kept guns, jewelry, and cash from his business in a green safe at his home. In 2009, Moreland began working for Manna as a contractor at Manna's home. Within days, the safe went missing, and Manna fired Moreland.

Roughly two years later, Moreland recruited two or three men to rob Manna's home. On the day of the robbery, Moreland picked up the men, purchased shotgun ammunition, and headed out. When they arrived at Manna's street, Moreland pointed out the home. He told the men where to enter, to ask for "Ernie," and to locate a dresser and safe which he believed contained cash and the titles of cars in Manna's car lot. The men exited, but Moreland remained in his car.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

2

Manna's son, also named Ernest, lived in the part of the home entered by the men. When they entered, he was in the shower. The intruders pointed a shotgun at his pregnant girlfriend, fetched him from the bathroom at gunpoint, ordered him to kneel beside his girlfriend, and demanded money, drugs, and guns. As instructed by Moreland, the men asked to speak to "Ernie" and asked where the dresser and the safe were located, warning that they knew about the cash and the auto sales business. The son explained that the cash from the business had already been deposited. The men bound the hands and feet of the son and his girlfriend with duct tape, and fled with $1,200 in cash.

On October 6, 2011, a grand jury indicted Moreland and two of his three accomplices, charging him with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); attempting and aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2; and using, carrying, and aiding and abetting the use and carry of a firearm while committing a crime of violence, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2.

Before trial, the government moved to admit evidence that Moreland had stolen a green safe from Manna's home while in his employ. The motion was granted. At trial, Manna's mother testified that she saw Moreland place a large green box onto his pickup truck, and Pennsylvania State Trooper Robert Kirby, who had investigated the theft of the safe, testified that Moreland's former girlfriend turned over a necklace that belonged to Manna along with four pieces of wood marred with scuffs of green paint that the police later determined came from the safe.

3

Manna was convicted after a jury trial, and was sentenced. He now appeals.

II.

## A. Sufficiency of the Evidence

We apply a "particularly deferential standard" when reviewing a sufficiency of the evidence challenge. United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013). Viewing the evidence in the light most favorable to the government, we must sustain a jury's verdict if "any rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. (internal quotation marks and brackets omitted).

### 1. Hobbs Act

Moreland argues that the government failed to establish the requisite jurisdictional element for a Hobbs Act conviction because the robbery took place at a home and not a business, and because the men "demanded a variety of items not necessarily related to a used car business, including drugs and weapons." (Appellant's Br. at 31.)

A defendant can only be convicted of Hobbs Act robbery if he "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce . . . or attempts or conspires so to do." 18 U.S.C. § 1951(a). As defined in the Hobbs Act, "[t]he term 'commerce' means commerce . . . between any point in a State . . . and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." 18 U.S.C. § 1951(b)(3). Proof that a robbery "deplete[d] the assets" or "specifically targeted the proceeds of businesses engaged in interstate

4

commerce . . . satisfies the Hobbs Act's jurisdictional" element. United States v. Powell, 693 F.3d 398, 404-5 (3d Cir. 2012) (internal quotation marks omitted).

Although the robbery at issue here took place at a residence, the evidence at trial demonstrated that it both targeted and depleted the assets of a business engaged in interstate commerce, facts undisturbed by the robbers' parallel interest in drugs and weapons. Manna's dealership conducted significant business across state lines. According to Moreland's accomplices, the object of the robbery was to obtain cash proceeds from the dealership. Those proceeds are precisely what the men, on Moreland's instructions, demanded Manna's son turn over during the robbery, and precisely what they ended up taking; indeed, the $1,200 cash they took came from the sale of a car that had taken place just the day before. Moreland's argument fails.

### 2. Using and Carrying and Aiding and Abetting the Use and Carry of a Firearm in Violation of 18 U.S.C. § 924(c)(1)

Moreland also argues that the evidence did not establish that he used or carried or aided and abetted the use or carry of the shotgun during the robbery. We disagree. "To establish liability for a crime based on an aiding and abetting theory, the government must prove that the underlying crime occurred and that the defendant knew of the crime and attempted to facilitate it." United States v. Gordon, 290 F.3d 539, 547 (3d Cir. 2002) (internal quotation marks omitted). "Although mere knowledge is not enough to convict, we have held that a defendant can be convicted of aiding and abetting a violation of § 924(c)(1) without ever possessing or controlling a weapon if the defendant's actions were

5

sufficiently intertwined with, and his criminal objectives furthered by the actions of the participant who did carry and use the firearm." Id. (internal quotation marks omitted).

The government presented evidence demonstrating far more than Moreland's passive awareness that one of the men was carrying the shotgun; indeed, Moreland facilitated the illicit use of the shotgun by driving the men to pick up ammunition on the way to the Manna home – ammunition which, according to one of the men, Moreland purchased himself. The shotgun, in turn, plainly furthered Moreland's criminal objectives, as it was used to effect the robbery he himself orchestrated.

**B. Evidence that Moreland Stole the Safe**

**1. Motion to Admit Under Fed. R. Evid. 404(b)**

The District Court granted the government's motion to admit evidence that Moreland, while working as a contractor in Manna's home two years prior to the offense at issue, loaded onto his pickup truck a green safe belonging to Manna and containing cash, guns, and jewelry, and was fired by Manna shortly thereafter. Moreland argues that the evidence lacked a proper purpose and was unduly prejudicial. We review for an abuse of discretion, which we will find "only where the district court's decision is arbitrary, fanciful, or clearly unreasonable." United States v. Green, 617 F.3d 233, 239 (3d Cir. 2010) (internal quotation marks omitted).

To be admissible under Rule 404(b), evidence of a prior bad act must be introduced for a proper purpose, relevant, more probative than prejudicial, and subject to a limiting instruction. See id. at 249. Proving preparation, plan, intent, and motive are all

proper purposes under Rule 404(b)(2).

As the District Court found, the challenged evidence was highly probative of Moreland's role as the orchestrator of the robbery the subject of the indictment. The details surrounding the prior theft of the safe demonstrated that Moreland was uniquely aware of the valuables stored at Manna's home, that he may have targeted Manna out of retribution, and that he stayed in his car to avoid recognition, and not because he was unaware of or unwilling to follow through with the robbery that ensued. The District Court explicitly instructed the jury to limit its consideration of the evidence to the proper purposes for which it was received. We find no abuse of discretion.

### 2. Trooper Kirby's Testimony

Trooper Kirby testified that Karen Ogden, Moreland's former girlfriend, provided him with evidence linking Moreland to the theft of the safe from Manna's home. Moreland argues that Kirby's testimony violated his Sixth Amendment right to confront his accusers because Ogden did not testify at trial. Because Moreland failed to object to this testimony, we review for plain error. See United States v. Richards, 241 F.3d 335, 341 (3d Cir. 2001). We will, therefore, "correct only particularly egregious errors" that affect "substantial rights" and "seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

In relevant part, the disputed exchange between the government and Trooper Kirby proceeded as follows:

> Q. Did you speak with a person in this case, without telling us what she said, but did you speak with a person in this case by the name of Karen

Ogden?

A. Yes.

Q. And would you identify – what was her relationship to Kenneth Moreland, if you know?

A. She was the currently [sic] girlfriend of Kenny Moreland, and that they lived together.

\*     \*     \*

Q. All right, now as you were – as part of your investigation in this case, did Ms. Ogden turn over some items to you?

A. Yes.

Q. Okay, the first exhibit before is #38. And what's depicted in that photograph?

A. It's a gold rope chain with a heart pendant – gold heart pendant that's attached to it, and on the front of the heart pendant it says "I love you."

\*     \*     \*

Q. All right, and where is it that you got that heart pendant?

A. Karen Ogden.

Q. How about the exhibits – I think they're marked 41?

A. Correct, 41.

Q. What's depicted in #41?

A. 41 are pieces of 2 x 4. Three of the four pieces have like green paint transfer – excuse me, green paint transfer that came from what we believe is the safe. And then the one doesn't have any paint transfer on it. And then Exhibit 42 is just a closeup of the green color of the transfer of the paint onto the wood.

Q. All right, and where did you get those items?

8

A. Karen Ogden.

(App. 523-525.)

Because Trooper Kirby referred only to physical evidence turned over by Ms. Ogden, and not to any statements made by her, no part of the disputed exchange implicated Moreland's rights under the Confrontation Clause. See Crawford v. Washington, 541 U.S. 36, 51 (the Confrontation Clause "applies to witnesses . . . who bear testimony. Testimony, in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact.") (citation, brackets, and internal quotation marks omitted). There was no error, much less plain error, here.

## III.

The judgment of sentence will be affirmed.